UNITED STATES of America, Appellee,

v.

Derek Shelton LITTLEFIELD, Appellant.

UNITED STATES of America, Appellee,

v.

Johnny D. BONE, Appellant.

Nos. 78–1813, 78–1814.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1979.

Decided March 15, 1979.

William C. McArthur of McArthur & Lassiter, Little Rock, Ark., filed brief for appellants.

W. H. Dillahunty, U. S. Atty., and Don N. Curdie, Asst. U. S. Atty., Little Rock, Ark., filed brief for appellee.

Before MATTHES, Senior Circuit Judge, HENLEY, Circuit Judge, and NANGLE, District Judge.*

MATTHES, Senior Circuit Judge.

Derek Shelton Littlefield and Johnny D. Bone were jointly indicted, tried and found guilty of conspiring to possess with intent

to distribute heroin, in violation of 21 U.S.C. §§ 841 and 846.[1] Named in the indictment as coconspirators, but not as defendants, were Robert Lawrence Shafer and Richard DeWayne Zumbro. Both unindicted coconspirators testified for the government. Each admitted his involvement and implicated both Littlefield and Bone in the conspiracy. The two defendants retained the same attorney who represented them in the district court and who filed separate notices of appeal from the judgments of conviction and a joint brief in this court. The appeals were properly consolidated and submitted on the record and briefs by mutual consent of the attorney for the defendants and the United States Attorney. Oral argument was waived.

### No. 78–1813 Littlefield's appeal

On the day before these appeals were scheduled to be submitted to our court, our Clerk was notified of the death of the appellant Derek Shelton Littlefield. The attorney who represented Littlefield at trial and in this court has filed a written suggestion of death of appellant Littlefield in which the Assistant United States Attorney has concurred.

The death of a defendant in a criminal case during the pendency of an appeal renders moot the appeal and abates the cause against the deceased defendant. *United States v. Moehlenkamp,* 557 F.2d 126 (7th Cir. 1977); *United States v. Fairfield,* 526 F.2d 8, 9 (8th Cir. 1975); *Crooker v. United States,* 325 F.2d 318 (8th Cir. 1963). Therefore, we vacate the judgment of conviction as to defendant Littlefield and remand the cause to the district court with instructions to dismiss the indictment as to the deceased appellant.

### No. 78–1814 Bone's appeal

Two points of error are relied upon by the appellant in seeking a reversal and re-

---

* The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. Section 841 makes it unlawful to possess with intent to distribute a controlled substance.

Section 846 provides that any person who attempts *or conspires* to commit any offense described in § 841 shall be subject to imprisonment or fine.

mand for a new trial.[2] First, the district court erroneously permitted the government to introduce hearsay testimony and such hearsay prejudiced the appellant and was directly responsible for his conviction. Second, the government failed to establish a submissible case.

Having meticulously examined the transcript of the testimony and the numerous exhibits offered by the government and admitted into evidence without objection, we encounter no problem in rejecting both contentions and consequently affirm the conviction of Bone, the only remaining appellant.

We deem it appropriate to discuss and consider the two assignments of error in inverse order. This procedure is advisable because a review of the evidence will demonstrate the unsoundness of the first contention which, as noted, is focused upon the introduction of hearsay testimony.

## I

### Sufficiency of the Evidence

■ A conspiracy has been likened to a partnership in crime and an overt act of one partner may be and usually is the act of all. *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 253–54, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). As aptly stated by this court, quoting from *Pinkerton v. United States,* 328 U.S. 640, 644, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946):

"A conspiracy is a partnership in crime. *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 253, 60 S.Ct. 811, 84 L.Ed. 1129. It has ingredients, as well as implications, distinct from the completion of the unlawful project."

*United States v. Skillman,* 442 F.2d 542, 548 (8th Cir.), *cert. denied,* 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971).

■ It is also settled doctrine that the crime of conspiracy is complete on the agreement to violate the law as implemented by one or more overt acts, however inno-

cent such act standing alone may be, and it is not dependent on the success or failure of the planned scheme. *United States v. Thompson,* 493 F.2d 305, 310 (9th Cir.), *cert. denied,* 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974); *United States v. DePugh,* 266 F.Supp. 417 (W.D.Mo.1967), *rev'd on other grounds,* 401 F.2d 346 (8th Cir. 1968). *See also United States v. Howe,* 591 F.2d 454 (8th Cir. 1979).

■ We proceed to examine the evidence, having in mind that it must be viewed in the light most favorable to the government, *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); and that we must accept as established all reasonable inferences to support the conviction. *United States v. Scholle,* 553 F.2d 1109, 1118 (8th Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); *United States v. Overshon,* 494 F.2d 894 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974). Inasmuch as the prosecution of Littlefield has been terminated, we stress the involvement of the appellant Bone. Because of Littlefield's active role in the conspiracy, however, we find it necessary to review the evidence as it relates to him.

Littlefield and coconspirators Shafer and Zumbro were the active participants in the conspiracy. Appellant Bone played an important, although somewhat more passive, role in carrying out the unlawful agreement.

Beyond peradventure of a doubt, this record discloses evidence from which the jury could reasonably infer that Bone became involved on November 30, 1977. A government exhibit, introduced without objection, showed that on that date $1,973.40 was wired by Western Union telegraphic money order to Derek Littlefield in El Paso, Texas. The application for the money order was signed by Johnny Bone. The latter, in his testimony, recalled the incident and admit-

---

2. Although appellant challenges the sufficiency of the evidence to warrant submission of the case to the jury, an outright reversal is not sought but rather a reversal and remand for new trial.

ted filling out and signing the application. His version of the transaction was that one Roger Watson had furnished the amount wired to Littlefield and that he, Bone, had merely prepared and signed the application. Watson did not appear as a witness and Bone's explanation was not corroborated by any other witness or in any respect. On the other hand, coconspirator Shafer testified that Littlefield had informed him on or about November 30 that Bone had wired Littlefield approximately $2,100.

The events directly relating to the procurement of the heroin occurred between February 7 and February 11, 1978. On the 7th, Littlefield, Shafer and Zumbro travelled to El Paso, Texas to procure heroin. All three were addicted to the use of hard drugs. Although Bone did not make the journey to El Paso, he admitted, and all of the evidence established, that Bone gave his American Express credit card, his drivers license and his expired Bank of America credit card to Littlefield prior to the El Paso trip. It also appears without contradiction that the American Express credit card was used by Littlefield to pay the plane fares of all three for the trip from Little Rock, Arkansas, to El Paso, Texas, as well as for the return flight, and that the credit card was used for other purposes while Littlefield, Shafer and Zumbro were in El Paso, including the rental of an automobile and the charge of the motel where the three lodged for two or three days.

Bone claims he did not authorize Littlefield to use the credit card for any purpose but merely loaned it, his drivers license and the other credit card to Littlefield so that he could establish credit when and where necessary in connection with the El Paso trip. It is also significant that on February 9, 1978, Bone wired Littlefield $375. Again, there was a variance in the testimony as to this transaction. Bone claimed that on February 6 or 7 Littlefield paid Bone, at the latter's home in Little Rock, $400 in satisfaction of the amount Bone had previously loaned Littlefield and that Bone later wired $375 to Littlefield because of repeated telephone calls from Littlefield who claimed he was "broke" and needed the money to en-

able him to return from El Paso to Little Rock. But Shafer's version of the $400 transaction was at odds with Bone's testimony. In short, the government's theory, borne out by the evidence, particularly the testimony of the coconspirators, was that Bone was fully aware of the purpose of the trip to El Paso, that the four participants intended to purchase a large quantity of heroin and sell part of it, and that Bone and Littlefield were to share in the ill-gotten profits. To elaborate in detail upon all of the evidence relied upon to prove the conspiracy would unduly lengthen this opinion. As noted previously, we have examined all of the oral testimony and written evidence. In addition to what has been said above, it should be noted that there were numerous long distance telephone conversations between Littlefield and Bone from El Paso to Little Rock and from Little Rock to El Paso, and that the coconspirators also conversed with Bone from El Paso. More importantly, while on that trip, a quantity of heroin was purchased. On February 11 Littlefield, Shafer and Zumbro returned to Little Rock. Zumbro had the heroin in his possession. All were arrested upon their arrival at Little Rock and the heroin was recovered from the place where Zumbro had thrown it shortly after he deplaned. Bone was arrested a few days later.

This record convinces us that here, if ever, the evidence was sufficient to show that a conspiracy was formed to purchase and distribute heroin and that there were numerous overt acts while the conspiracy was in effect for the purpose of carrying out and effectuating the object of the unlawful agreement. There was substantial evidence to implicate Littlefield and Bone as participants in the conspiracy. Stripped of all nonessentials, this like many conspiracy cases turned to a large extent upon the credibility of the witnesses. On the one hand, the testimony of Shafer and Zumbro clearly and unequivocally implicated Bone and Littlefield. On the other hand, Bone and Littlefield attempted by their testimony to persuade the jury that they were not guilty of any wrongdoing and were, in ef-

fect, the victims of unfortunate circumstances. Considering all of the evidence, particularly the numerous government exhibits, we readily comprehend why the jury chose to credit the government's theory of the prosecution and why the jury found Bone guilty as charged.

## II

### Hearsay Testimony

The following occurred during the testimony of coconspirator Zumbro:

Mr. Curdie [Asst. U.S. Attorney]: Your Honor, I'll submit . . . I'll ask the question again [relating to the $400 transaction]. What did Mr. Shafer tell you?

A. Robert Shafer told me . . .

Mr. McArthur [Attorney for Littlefield and Bone]: Your Honor, I'd ask that the jury be admonished that this is hearsay. It's not given as the truth but only as having been said and should not be considered for the truth unless there's other than hearsay testimony.

The ruling of the district court constituted a tacit or implied overruling of the objection.

■ The foregoing constitutes the only objection to the testimony of any of the numerous witnesses on the ground of hearsay. Likewise, the objection is the sole basis for appellant Bone's present contention that his rights were prejudiced because of the admission of hearsay testimony. Implicit in the objection is the recognition that the out-of-court declaration of a co-conspirator is admissible, provided there is independent evidence to establish the conspiracy. Fed.R.Evid. 801(d)(2)(E). As we have shown under Division I above, there was abundant and substantial independent evidence to show that an unlawful agreement or conspiracy had been concocted between the two defendants and the coconspirators.

■ Moreover, in denying the motion for directed verdict at the close of defendants' case, the court found there was independent evidence to prove the conspiracy, that numerous overt acts had been committed in furtherance of the conspiracy and in effect ruled that the hearsay testimony complained of was admissible.

This case prompts us to again direct the attention of the district courts in this circuit to the guidelines promulgated by this court in prosecutions where the admission of out-of-court declarations by a coconspirator is in controversy. In *United States v. Bell*, 573 F.2d 1040, 1043–45 (8th Cir. 1978), decided April 19, 1978, more than four months prior to the instant trial, we delineated the procedure to be followed in disposing of the question of whether such hearsay statements in a conspiracy case should be admitted. We of course assume that the district judges in this circuit have read and are conversant with the *Bell* opinion, and we hasten to add that the United States Attorneys in this circuit should keep abreast with the law as declared by this court, particularly in all criminal proceedings. But this record discloses that the teachings of *Bell* as reinforced by *United States v. Macklin*, 573 F.2d 1046 (8th Cir.), *cert. denied*, —— U.S. ——, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978), were not fully adhered to. A similar situation prevailed in *United States v. Morton*, 591 F.2d 483 (8th Cir. 1979), where a panel of this court commented upon the failure to follow our instructions as outlined in the *Bell* case. *Id.*, at 484.

It should be made clear that the guidelines established in *Bell* are flexible and are not infallible, and we should hesitate to fault a trial court for failure to comply literally with the procedures enunciated in *Bell*. But considering that rules are made to be observed and not to be ignored, we suggest that a diligent effort be made by the district judge, the prosecutor and counsel for the accused to observe in principle at least the procedures we have ordained. In this connection, we suggest that the district judges impart to the attorneys in the case, particularly the attorney representing the accused, prior to the trial, the procedure that will be followed in the event the admission of hearsay testimony becomes an issue. We leave the method of accomplishing this result to the discretion of the district judge.

As previously stated, however, the record does disclose that here the district judge, in ruling on the motion for a directed verdict, did find that the conspiracy had been established by independent proof and in effect held that the hearsay testimony under attack was admissible. The record fails to disclose that Bone was prejudiced by the procedure followed, and therefore we conclude that affirmance of Bone's conviction is in order.

Littlefield's conviction is vacated with directions. The conviction of Bone is affirmed.