Judge ERDMANN
delivered the opinion of the Court.
Appellant, Specialist Gregory G. Rorie, was tried by general court-martial at Fort Polk, Louisiana. Pursuant to his pleas, he was convicted of three specifications of wrongful distribution of cocaine in violation of Article 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 912a (2000). Appellant was sentenced to confinement for two years and reduction to the grade of Private E-l. On June 8, 2001, the convening authority approved the sen *400 tence. On June 28, 2002, the Army Court of Criminal Appeals affirmed the findings and sentence in a memorandum decision. United States v. Rorie, ARMY 20000964 (A. Ct.Crim. App. June 28, 2002).
Appellant died on August 31, 2002. On September 27, 2002, Appellant’s detailed appellate defense counsel filed a Petition for Grant of Review and a Motion to Abate with this Court. Upon consideration of the Petition for Grant of Review and the Motion to Abate, we specified and ordered briefs on the following two issues:
ISSUE I
WHETHER THE FILING OF A PETITION FOR GRANT OF REVIEW BY APPELLATE DEFENSE COUNSEL WAS SUFFICIENT TO CONFER JURISDICTION ON THIS COURT OR WHETHER JURISDICTION WAS RETAINED BY THE UNITED STATES ARMY COURT OF CRIMINAL APPEALS.
ISSUE II
IN THE EVENT THAT THIS COURT DOES HAVE JURISDICTION, WHETHER THE PROCEEDINGS SHOULD BE ABATED.
Prior to argument the parties agreed that this Court had jurisdiction over the question of whether the proceedings and conviction in this case should be abated ab initio. Therefore, we proceed directly to consideration of the second specified issue. For the reasons that follow, we hold that abatement ab initio is neither appropriate nor required at this Court.
FACTS
The United States Army Court of Criminal Appeals reviewed Appellant’s conviction and affirmed the findings and sentence in a memorandum decision on June 28, 2002. On July 1, 2002, Appellant’s initial appellate defense counsel prepared correspondence to Appellant advising him that the Army court had rendered a decision in his case. On July 5, 2002, the Deputy Clerk of the Army court sent notice of the Army court decision to Appellant by certified mail, return receipt requested.
On July 12, 2002, the United States Postal Service returned the certified mail with the notation “Forward Time Exp Rtn to Send.” Constructive service was therefore effected on July 5, 2002, as the appellate defense counsel had received a copy of the decision and the decision had been deposited in the United States mail to Appellant on that date. Article 67(b)(2), UCMJ, 10 U.S.C. § 867(b)(2) (2000).
Appellant had 60 days within which to petition this Court for a grant of review, a period that would have expired on September 3, 2002. On August 31, 2002, Appellant sustained massive head trauma in an automobile accident and died. Upon learning of Appellant’s death, appellate defense counsel sought and obtained a copy of the death certificate. Subsequently, on September 27, 2002, appellate defense counsel filed a Petition for Grant of Review and a Motion to Abate the proceedings.
Upon consideration of the Petition for Grant of Review and the Motion to Abate, this Court specified the previously noted issues and directed that the parties file briefs.
BACKGROUND

Principals of Abatement ab initio

Appellant’s motion for abatement rests upon the general concept that the death of an accused after conviction but before completion of an appeal of right abates the entire proceeding from its inception. If granted, abatement ab initio has the effect of “eliminating or nullifying” the proceeding or conviction “for a reason unrelated to the merits” of the case. Black’s Law Dictionary 2 (7th ed.1999). “[I]t is as if the defendant had never been indicted and convicted.” United States v. Logal, 106 F.3d 1547, 1551-52 (11th Cir.1997).
Two reasons are commonly advanced in support of abatement ab initio upon the death of a criminal defendanVappellant. The first reason advanced relates to the interests of justice. The 7th Circuit Court of Appeals *401 has noted that “the interests of justice ordinarily require that [a defendant] not stand convicted without resolution of the merits of his appeal” and echoed the Supreme Court’s view that such an appeal “is an ‘integral part of [our] system for finally adjudicating [the] guilt or innocence [of a defendant]’.” United States v. Moehlenkamp, 557 F.2d 126, 128 (7th Cir.1977)(quoting Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956)). See also United States v. Pogue, 19 F.3d 663, 665-66 (D.C.Cir.1994).
Death arguably disrupts appellate adjudication and may leave an unreviewed conviction that is unsound, unlawful, or unjust. Confidence may be lacking in such convictions; they should not serve as the basis for finality. See Logal, 106 F.3d at 1552 (“[A] criminal conviction is not final until resolution of the defendant’s appeal as a matter of right”); Pogue, 19 F.3d at 665-66 (rejecting arguments against abatement ab initio even when the conviction is based on a guilty plea). Thus, where “death has deprived the accused of his right to [an appellate] decision,” abatement serves the interests of justice by removing criminal convictions that do not have the necessary basis for confidence to support finality. Moehlenkamp, 557 F.2d at 128.
The second reason advanced is that the penal purposes of a criminal proceeding are defeated by the death of the defendant. Charges, trial, conviction, and sentences are directed at and punish the individual. Those purposes can not be served after the defendant has passed away. See United States v. Asset, 990 F.2d 208, 211 (5th Cir.1993); United States v. Pomeroy, 152 F. 279, 282 (C.C.S.D.N.Y.1907). “[S]huffling off the mortal coil completely forecloses punishment, incarceration, or rehabilitation, this side of the grave at any rate.” United States v. Dudley, 739 F.2d 175, 177 (4th Cir.1984).

Application by Federal and State Courts

Nonetheless, abatement is not the universal policy in the federal and state courts. For a number of years, the United States Supreme Court’s position on abatement lacked clarity.[1] In Durham v. United States, 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971), the Court acknowledged its previous “ambiguity,” id. at 482, 91 S.Ct. 858, and adopted the policy of abatement ab initio:
The unanimity of the lower federal courts which have worked with this problem over the years ... is impressive. We believe they have adopted the correct rule. Accordingly, the motion for leave to proceed in forma pauperis and the petition for a writ of certiorari are granted. The judgment below is vacated and the ease is remanded to the District Court with directions to dismiss the indictment.
Id. at 483, 91 S.Ct. 858. Justice Blackmun dissented. In his dissent he found a significant distinction in that the decedent was not exercising an appeal of right. Id. at 484, 91 S.Ct. 858 (Blackmun, J., dissenting).
A few years later and without discussion, the Supreme Court abruptly changed its position on abatement in Dove v. United States, 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976). The entire opinion of the Court consisted of the following:
The Court is advised that the petitioner died at New Bern, N.C., on November 14, 1975. The petition for certiorari is therefore dismissed. To the extent that Durham v. United States, 401 U.S. 481[, 91 S.Ct. 858, 28 L.Ed.2d 200] (1971), may be inconsistent with this ruling, Durham is overruled.
Id. at 325, 96 S.Ct. 579. While the appeal to the Supreme Court was dismissed, the underlying criminal conviction was left intact. Thus, abatement ab initio has not been a policy at the United States Supreme Court since 1976.
*402 On the other hand, the Federal Circuit Courts of Appeals unanimously apply the policy when an accused dies before those courts complete appellate review of a federal conviction.[2] The circuit courts have adhered to a policy of abatement ab initio despite the Supreme Court’s decision in Dove, largely on the basis that an appeal to the circuit court is a matter of right, whereas certiorari is discretionary review before the Supreme Court. See, e.g., United States v. Christopher, 273 F.3d 294, 296 (3d Cir.2001); United States v. Pauline, 625 F.2d 684, 685 (5th Cir.1980); Moehlenkamp, 557 F.2d at 128.
The determination of whether and how much of a criminal conviction to abate in the state courts varies considerably, with most courts adopting some form of abatement.[3] It is worth noting, however, that a number of states have recently changed their policies, moving away from abatement ad initio. See, e.g., State v. Salazar, 123 N.M. 778, 945 P.2d 996, 1003 (1997)(noting that several states have substantially changed or abandoned their policies of abatement ab initio); State v. Clements, 668 So.2d 980 (Fla.1996); State v. Makaila, 79 Hawaii 40, 897 P.2d 967 (1995); People v. Peters, 449 Mich. 515, 537 N.W.2d 160 (1995).

Application by this Court

This Court has followed the policy of abatement ab initio since 1953. In United States v. Mosher, 14 C.M.R. 229 (C.M.A.1953)(summary disposition), we noted that the petitioner was deceased and “ordered that this cause be, and the same is, hereby abated, and it is further ordered that the Petition for Grant of Review be, and the same is, hereby dismissed.” Since these early cases, we have routinely applied the policy of abatement ab initio in summary fashion when an appellant died while his case was pending at this Court.[4]
*403 In United States v. Kuskie, 11 M.J. 253 (C.M.A.1981), we specifically addressed the question of whether cases pending before this Court should be abated ab initio when a petitioner/appellant dies. This Court adhered to the policy of abatement ab initio and distinguished our review authority from that of the United States Supreme Court:
It is true that this Court has referred to itself as “the supreme court of the military judicial system.” McPhail v. United States, 1 M.J. 457, 462 (C.M.A.1976). Such a characterization in itself, however, is not sufficient to equate a military accused’s right to petition this Court for review with a petition for certiorari to the Supreme Court. Such an equation ignores the substantial differences in statutory language between Article 67(b)(3) and 28 U.S.C. 1254(1). See 28 U.S.C. 1291. Moreover, it is indifferent to the critical role this Court plays in direct review of courts-martial (Noyd v. Bond, 395 U.S. 683, 694, 89 S.Ct. 1876, 1882, 23 L.Ed.2d 631 (1969)) as the court of last resort in the military justice system. Schlesinger v. Councilman, 420 U.S. 738, 751, 95 S.Ct. 1300, 1309, 43 L. Ed.2d 591 (1975). Such distinctions are central to a proper understanding of the Dove decision. United States v. Pauline, 625 F.2d 684 (5th Cir.1980); See Disposition of a Federal Criminal Case When Defendant Dies Pending Appeal, 13 U.Mich.L.J.Ref. 143, 147-48 (Fall 1979). Moreover, in cases decided by this Court since Dove v. United States, supra, we have not adopted this approach to the deceased-appellant situation. See United States v. Flannigan, 6 M.J. 157 (C.M.A. 1978); United States v. Day, 5 M.J. 998 (C.M.A.1976); United States v. Johnson, 3 M. J. 391 (C.M.A.1977).
Id. at 254-55 (footnotes omitted).
Nevertheless, this Court’s policy on abatement ab initio has not been without dissent. In Kuskie, Judge Cook disputed that there were “substantial differences” between the Supreme Court’s certiorari authority and this Court’s petition authority, noting that both had the same “substantive nature as a permissive appeal.” Id. at 256 (Cook, J., dissenting).
The lack of unanimity on this policy was further evidenced in Berry v. The Judges of the United States Army Court of Military Review, 37 M.J. 158 (C.M.A.1993). There, a majority of this Court abated Berry’s conviction ab initio because the conviction was not final within the meaning of Article 71(e), UCMJ, 10 U.S.C. § 871(c) (2000). Berry died seven days prior to the expiration of his time within which to petition this Court. While the majority focused on Article 71, it again rejected the argument that this Court’s petition authority was akin to the discretionary nature of certiorari review at the Supreme Court. Rather, the majority found this Court’s authority “more analogous” to that of the Federal Circuit Courts of Appeals. Id. at 160.
Judges Crawford and Gierke dissented. In addition to finding the facts of Berry’s case to be distinct from those present in Kuskie, the dissent noted a number of reasons supporting a conclusion that abatement ab initio was not a required consideration at this Court: (1) appellate jurisdiction of this Court is similar to that of the Supreme Court; (2) finality under Article 71(c) is an administrative matter that has no impact upon determining whether an appeal was of right or discretionary; and (3) the practice in this Court is not “more analogous” to the Federal Circuit Courts of Appeals where the appeal is one of right. 37 M.J. at 162-65 (Crawford, J., with whom Gierke, J., joins, dissenting).
More recently, in United States v. Ward, 54 M.J. 390 (C.A.A.F.2001), this Court declined to reconsider and abate the proceedings where the appellant died seven days after this Court had issued a decision in his case. In Ward, the Court focused on the “interests of justice ordinarily require that [a defendant] not stand convicted without reso *404 lution of the merits of an appeal.” Id. at 391 (quoting Pogue, 19 F.3d at 665). We found that the interests of justice were satisfied by “full review” and that “abatement ab initio due only to death” was not required. Id. at 391.
DISCUSSION
Resolution of the issues presented in this case requires not only an inquiry into the principles of abatement ab initio, but also an inquiry into the doctrine of stare decisis, as a change in the Court’s position on abatement would overrule established precedent of this Court.

Abatement ab initio

As noted, ease law sets forth two primary reasons in support of the policy of abatement ab initio. The first purpose relates to the interests of justice and dictates that a defendant should “not stand convicted without resolution of the merits of his appeal[.]” Moehlenkamp, 557 F.2d at 128 (citing Griffin, 351 U.S. at 18, 76 S.Ct. 585). See also Pogue, 19 F.3d at 665; Asset, 990 F.2d at 210-11. The post-trial and appellate processes under the Uniform Code of Military Justice afford a military defendant with a clemency review and three levels of appeal following a conviction at the trial level: an initial appeal to a Court of Criminal Appeals; an appeal to this Court; and an appeal to the U.S. Supreme Court. See Articles 60, 66, 67, and 67a, UCMJ, 10 U.S.C. §§ 860, 866, 867, 867a (2000).
We believe that the initial review by a Court of Criminal Appeals provides a military defendant with a substantive legal and factual review. The interests of justice are further enhanced at the Courts of Criminal Appeals by an appellant’s broad right to personally assert matters before the military appellate courts. See United States v. Grostefon, 12 M.J. 431 (C.M.A.1982).
The Courts of Criminal Appeals are unique and are vested great power to do justice. United States v. Gibson, 51 M.J. 198, 202 (C.A.A.F.1999). We have often expressed our confidence in the Courts of Criminal Appeals and in the ability and expertise of the “experienced and mature judges of the Courts of Criminal Appeals[.]” United States v. Boone, 49 M.J. 187, 195 (C.A.A.F.1998)(quoting United States v. Cook, 46 M.J. 37, 39 (C.A.A.F.1997)). See also United States v. Eversole, 53 M.J. 132, 133 (C.A.A.F.2000)(expressing confidence in the “expertise” of the Court of Criminal Appeals).
The second purpose advanced for abatement ab initio is that punishment in the criminal arena is personal and the death of the defendant eliminates the purpose of punishment. See Asset, 990 F.2d at 211; Pomeroy, 152 F. at 282. Unquestionably, upon the death of a military defendant traditional punishments such as confinement and forfeiture become moot. However, we believe there remains a substantial punitive interest in preserving otherwise lawful and just military convictions. For persons serving in uniform who are subject to court-martial and for the Government, military status and the nature of a discharge remain significant considerations. We do not believe that the death of an appellant following the resolution of an appeal to the Court of Criminal Appeals moots the punitive purposes or substantial interests attached to a bad-conduct discharge, a dishonorable discharge, or a punitive dismissal from the service.
Another consideration to weigh in analyzing this issue is the impact of abatement ab initio on victims’ rights. In 1990 Congress adopted the “Victims of Crime Bill of Rights”. 42 U.S.C. § 10606 (2000). Subsequent to this Court’s decisions in Kuskie and Berry, the Department of Defense revised Dep’t of Defense, Directive 1030.1, Victim and Witness Assistance (November 23, 1994) [hereinafter Directive 1030.1], to adopt the provisions of 42 U.S.C. § 10606 as matters of Department of Defense policy. United States v. Spann, 51 M.J. 89, 91 (C.A.A.F. 1999). Directive 1030.1 recognized the role of victims in the criminal justice process and specifically provided:
Court-martial convening authorities and clemency and parole boards shall consider making restitution to the victim a condition *405 of granting pretrial agreements, reduced sentence, clemency, and parole.
Directive 1030.1, at para. 4.5.
It is not uncommon for pretrial agreements to contain restitution provisions. We also note that adjudged and approved fines, which create a debt, may have compensatory aspects. For example, an adjudged fine may be based upon the fact that an accused was unjustly enriched by offenses against the Government. See Rule for Courts-Martial 1003(b)(3) discussion.
As noted, when abatement ab initio is applied “it is as if the defendant had never been indicted and convicted.” Logal, 106 F.3d at 1551-52. Particularly where there has been one level of appeal of right, abatement ab initio at this level frustrates a victim’s legitimate interest in restitution and compensation.[5]
We find further support for our decision not to adopt a policy of abatement ab initio in the nature of this Court’s petition jurisdiction. The unique statutory jurisdiction of this Court is distinct from both that of the Supreme Court and the Circuit Courts of Appeals. We believe, however, that this Court’s petition authority is more akin to the writ authority exercised by the Supreme Court, particularly with respect to the primary sources of appeals, the writ of certiorari and the petition for grant of review. See 28 U.S.C. §§ 1254(1), 1257; Article 67(a)(3).
While Appellant and Amicus National Institute of Military Justice urged otherwise, there can be little doubt that this Court exercises discretionary review with respect to our petition docket. “[T]he question of what cases are heard by the [Court of Appeals for the Armed Forces] is a matter of internal management, properly left to that Court’s decision in accordance with guidelines expressed in that Court’s rules.” S.Rep. No. 98-53, at 34 (1983).[6] The discretionary nature of this Court’s petition jurisdiction is more analogous to the Supreme Court’s discretionary certiorari practice. We do not deprive an appellant of any review of right by changing our policy with respect to abatement ab initio.
Circuit courts that have reviewed the policy of abatement ab initio in the context of the Supreme Court’s rejection of such a policy have focused on a fundamental difference in the proceedings before the Supreme Court and the circuit courts. Appeals to the Circuit Courts of Appeal are of right. See 28 U.S.C. §§ 1291-1292 (2000). On the other hand, writs of certiorari are granted on a discretionary basis. See 28 U.S.C. §§ 1254, 1257 (2000). Thus, “[t]he prevailing practice of the Supreme Court to dismiss petitions for certiorari upon the death of the convicted defendant ... does not readily transfer to the Courts of Appeals.” Christopher, 273 F.3d at 296. See also Pauline, 625 F.2d at 685; Moehlenkamp, 557 F.2d at 128.
After the Supreme Court abandoned its policy of abatement ab initio in Dove, a number of courts focused on the nature of the Supreme Court’s discretionary certiorari jurisdiction as a critical factor in determining whether to maintain their own policies of abatement. Among the several Circuit Courts of Appeals to look at this aspect of the issue, there was consensus that an appellant’s appeal of right to the circuit courts was a substantial distinction that supported maintaining a policy of abatement ab initio. See, e.g., Christopher, 273 F.3d at 296; United States v. Davis, 953 F.2d 1482, 1486 (10th Cir.1992); United States v. Schumann, 861 F.2d 1234, 1236 n. 1 (11th Cir.1988); Moehlenkamp, 557 F.2d at 128.
Finally, we note that the rule of abatement ab initio is a matter of policy in the Federal courts. It is not mandated by the Constitu *406 tion or statute, nor have we adopted it as part of the Rules of Practice and Procedure for this Court. Absent direction from Congress or the President on this matter, we are convinced that abatement ab initio is not a policy compelled by the interests of justice or the jurisdictional underpinnings of this Court.

Stare Decisis

We recognize that our holding today is contrary to our existing precedent and are not unmindful of the importance that the doctrine of stare decisis plays in our decision-making. See United States v. Tualla, 52 M.J. 228, 230-31 (C.A.A.F.2000); United States v. Boyett, 42 M.J. 150, 154-56 (C.A.A.F.1995). The doctrine of stare decisis is “the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.” Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).
The doctrine plays a key role in a number of areas. The doctrine is “most compelling” where courts undertake statutory construction. Hilton v. South Carolina Public Ry. Comm’n, 502 U.S. 197, 205, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991); Patterson v. McLean Credit Union, 491 U.S. 164, 172, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). It comes into play in constitutional interpretation where “correction through legislative action is practically impossible!.]” Payne, 501 U.S. at 828, 111 S.Ct. 2597 (quoting Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 407, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting)). But see Harris v. United States, 536 U.S. 545, 556, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002)(stare decisis less important in constitutional cases). The doctrine is important in “property and contract rights, where reliance interests are involved!.]” Payne, 501 U.S. at 828, 111 S.Ct. 2597. Additionally, the doctrine plays a role in ensuring that decisions of superior courts are not ignored or overturned by inferior courts. See United States v. Allbery, 44 M.J. 226, 227-28 (C.A.A.F.1996).
A decision to alter a policy of abatement ab initio does not fall into any of the categories identified above as important areas within which to preserve precedent under stare decisis. The issue before this Court is not one of constitutional or statutory interpretation, nor have we been presented with- any “reliance interests” of Appellant.
“Stare decisis is a principle of decision making, not a rule, and need not be applied when the precedent at issue is ‘unworkable or ... badly reasoned’.” Tualla, 52 M.J. at 231 (quoting Payne, 501 U.S. at 827, 111 S.Ct. 2597). Admittedly, the current policy of abatement cannot be considered “unworkable.” We believe, however, that the weight of reason, as discussed in the preceding section of this opinion, supports a change in the rule.
First, Berry focused in part upon the impact of finality under Article 71. We believe that this focus was misplaced. The proper focus of cases dealing with abatement is upon the opportunity for an appeal of right and a conviction that can be relied upon as fair and just. Moreover, there is nothing in the plain language of Article 71 imposing a congressional mandate for abatement ab initio. Article 71 no more compels that we adopt a policy of abatement ab initio than it compels the United States Supreme Court to have such a policy with respect to its review of military convictions.
The second asserted premise for abatement ab initio at this Court is the distinction drawn between the nature of review by petition at this Court and review by certiorari at the Supreme Court. See Berry, 37 M.J. at 160; Kuskie, 11 M.J. at 254-55. The mere possibility that this Court will exercise its discretion to find “good cause” for a grant of review does not transform into an appeal of right similar to that existing at the Federal Circuit Courts of Appeals. See 28 U.S.C. § 1291 (2000). See also Berry, 37 M.J. at 164 (Crawford, J., dissenting).
Thus, we believe that this Court may alter its policy in regard to abatement ab initio without being constrained by stare decisis. We are less constrained by the doctrine of *407 stare decisis in this instance because we are determining a matter of court policy rather than contemplating a change in the law or a change impacting upon an articulable right of an appellant. “The determination of a disposition to be made of proceedings cast into limbo by the death of the defendant-appellant appears, to us, to be one of policy only.” Whitehouse v. State, 266 Ind. 527, 364 N.E.2d 1015, 1016 (1977).
CONCLUSION
We therefore adopt the rule established by the U.S. Supreme Court in Dove. When an appellant dies pending an Article 67(a)(3) appellate review by this Court, we will dismiss or deny the petition but will not abate the action ab initio.[7] Berry and Kuskie are hereby overruled to the extent that they are inconsistent with this decision. In view of our conclusion that an appeal to the Courts of Criminal Appeals is an appeal of right, we leave to those courts or the Judge Advocates General to establish the parameters of a policy of abatement in the event that an appellant dies pending review at a Court of Criminal Appeals.
DECISION
The Motion to Abate the Proceedings is denied, and the Petition for Grant of Review is dismissed.

. See, e.g., Singer v. United States, 323 U.S. 338, 346, 65 S.Ct. 282, 89 L.Ed. 285 (1945)(Court dismissed writ and "remanded to the District Court for such disposition as law and justice require.”); United States v. Johnson, 319 U.S. 503, 520 n. 1, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943)(dismissed writ and left "disposition of the fine that was imposed to the Circuit Court of Appeals.”); Menken v. Atlanta, 131 U.S. 405, 405, 9 S.Ct. 794, 33 L.Ed. 221 (1889)(considered the cause “abated” and ordered writ of error dismissed); List v. Pennsylvania, 131 U.S. 396, 396, 9 S.Ct. 794, 33 L.Ed. 222 (1888)("cause has abated”).

. See United States v. Wright, 160 F.3d 905, 908 (2d Cir.1998)("[W]e normally vacate the judgment and remand to the district court with instructions to dismiss the indictment.”); United States v. Christopher, 273 F.3d 294, 297 (3d Cir. 2001)("The rule of abatement is well established, and we adopt it as the law in this Court. Thus, where a convicted criminal defendant dies after filing an appropriate appeal, the conviction will be abated and the case remanded to the District Court with instructions to dismiss the indictment.”); United States v. Dudley, 739 F.2d 175, 176 (4th Cir.1984)("requiring ultimately that case be remanded ... with direction to vacate ab initio, as abated, the criminal proceedings.”); United States v. Asset, 990 F.2d 208, 210 (5th Cir.1993)("It is well established in this circuit that the death of a criminal defendant pending an appeal of his of her case abates, ab initio, the entire criminal proceeding.”); United States v. Toney, 527 F.2d 716, 720 (6th Cir.1975)(conviction vacated and ”remand[ed] the cause to the District Judge with instructions to dismiss the indictment against” the accused.); United States v. Moehlenkamp, 557 F.2d 126, 128 (7th Cir. 1977)(court followed its "established practice by dismissing [the] appeal as moot, vacating the conviction ..., and remanding the case to the district court for dismissal of the outstanding indictment[.]”); United States v. Littlefield, 594 F.2d 682, 683 (8th Cir.1979)("The death of a defendant in a criminal case during the pendency of an appeal renders moot the appeal and abates the cause against the deceased[.]”); D'Argento v. United States, 353 F.2d 327, 328 (9th Cir.1965)("[T]he prosecution abates on the death of the defendant.”); United States v. Davis, 953 F.2d 1482, 1486 (10th Cir.1992)("dismiss [the] appeal and remand the criminal judgment ... to the district court with instructions to vacate the judgment and dismiss the underlying indictment.”); United States v. Logal, 106 F.3d 1547, 1551-52 (11th Cir.1997)("This circuit has adopted the general rule that the death of a defendant during the pendency of his direct appeal renders his conviction and sentence void ab initio; i.e., it is as if the defendant had never been indicted and convicted.”); United States v. Pogue, 19 F.3d 663 (D.C.Cir.1994)(adopting the general policy of abatement ab initio).

. Tim A. Thomas, Annotation, Abatement of State Criminal Case by Accused's Death Pending Appeal of Conviction — Modem Cases, 80 A.L.R.4th 189, 191-200 (1990 & Supp.2002), identified seven categories of state court policies on abatement: abatement ab initio when a defendani/appellant dies pending resolution of his appeal; abatement ab initio where the appeal in issue is an appeal of right; abatement ab initio where the court has granted a discretionary application for review, thereafter treating the case as if the appellant had been given an appeal of right; the case is not abated and the appeal may be prosecuted; the case is not abated ab initio, but the appeal may not be prosecuted; a personal representative may be substituted to avoid abatement ab initio; or, the appeal abates without the superior court addressing whether the proceedings are abated ab initio.

. See, e.g., United States v. McGill, 55 M.J. 462 (C.A.A.F.2001)(summary disposition); United *403 States v. Brown, 34 M.J. 22 (C.M.A.1991)(summary disposition); United States v. Flannigan, 6 M.J. 157 (C.M.A.1978)(summary disposition); United States v. Johnson, 3 M.J. 391 (C.M.A.1977)(summary disposition); United States v. Ferguson, 50 C.M.R. 905 (1975)(summary disposition).

. The Supreme Court of Michigan recently recognized the significance of victims' rights when it substantially modified its own approach to abatement in People v. Peters, 449 Mich. 515, 537 N.W.2d 160 (1995). The Michigan Supreme Court stated that it was "not persuaded that abatement ab initio, when applied to compensatory sanctions, is consistent with Michigan law since the 1985 enactment of the Michigan Crime Victim's Rights Act[.]” Id. at 161.

. See also Eugene R. Fidell, Guide to the Rules of Practice and Procedure for the United States Court of Appeals for the Armed Forces 126-28 (10th ed.2001)(making several references to the discretionary nature of this Court's petition review).

. As the issue of abatement of an appeal involving capital punishment or an appeal certified by a Judge Advocate General are not before the Court, those issues will be reserved for another day. See Article 67(a)(l)-(2), Uniform Code of Military Justice, 10 U.S.C. § 867(a)(l)-(2) (2000).