# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-4013

_____

United States of America,               *
                                         *
          Plaintiff – Appellee,          *
                                         *
v.                                       *
                                         *
Jimmy W. Joiner,                         *
                                         *
          Defendant – Appellant.         *

_____

No. 05-1065

_____

United States of America,

          Plaintiff – Appellee,

v.

Donald Williamson,

          Defendant – Appellant.

Appeals from the United States
District Court for the
Eastern District of Arkansas.

*
*
*
*
*
*
*
*
*
*
*

_____

Submitted: June 21, 2005
Filed:  August 10, 2005

_____

Before MURPHY, BYE, and SMITH, Circuit Judges.
_____

BYE, Circuit Judge.

Jimmy W. Joiner and Donald Williamson appeal jury convictions for conspiring to injure judicial officers in their property in violation 18 U.S.C. § 372. Williamson also appeals a jury conviction for corruptly endeavoring to intimidate a federal prosecutor in violation of 18 U.S.C. § 1503(a). The convictions arise out of Williamson and Joiner's attempts to place liens on the real property of the federal judge and federal prosecutors involved in Williamson's prior drug-related conviction. On appeal, Williamson and Joiner raise a number of issues, collectively and individually, but none merit relief. We therefore affirm the judgment of the district court.

I

The facts critical to this appeal are relatively straightforward. In July of 2001, a jury in the United States District Court for the Southern District of Alabama convicted Williamson of two counts related to the manufacture and possession of methamphetamine. The Honorable Charles R. Butler presided over the case, which was prosecuted by Assistant United States Attorney (AUSA) Gloria Bedwell. Judge Butler sentenced Williamson to 120 months imprisonment, the statutorily mandated minimum sentence. Williamson appealed his conviction to the United States Court of Appeals for the Eleventh Circuit, which affirmed his conviction in an unpublished opinion on March 7, 2002.

The Federal Bureau of Prisons designated Williamson to serve his term of incarceration at the Federal Correctional Institution at Forrest City, Arkansas (FCI-Forrest City). It was there he met his co-defendant Joiner, who was serving a 115-month sentence as the result of escape and felon in possession convictions. While

serving their sentences at FCI-Forrest City, Williamson and Joiner took an inmate taught class entitled "You and the Law," where they superficially learned the nuts and bolts of the Uniform Commercial Code (UCC).

They used their newly gained knowledge to create and file false UCC Financing Statements, and amendments thereto, with the Arkansas Secretary of State's Office against Alabama real property owned by Judge Butler, Ms. Bedwell and David York, the United States Attorney for the Southern District of Alabama. The reason for filing these false UCC Financing Statements, according to Williamson and Joiner, was to draw attention to what they believed were the injustices of federal mandatory minimum sentences and allegedly illegally-enacted federal criminal statutes. They claimed Williamson was prosecuted illegally and demanded compensation in the amount of $25,000 for every twenty-three minutes in custody.

Williamson granted power of attorney status to Joiner, who acted on his behalf in his dealings with the alleged debtors. In this capacity, Joiner prepared all the documents as they related to the alleged debtors including the UCC Financing Statements, and amendments thereto, which together referred to the alleged debtors by name and gave a legal description of properties they owned. Joiner also mailed numerous letters and notices to the alleged debtors, as well as to their respective spouses. These letters and notices advised the alleged debtors and their spouses they had defaulted on certain amounts of indebtedness to Williamson, and to Joiner as alleged holder in due course, and they would proceed to liquidate the alleged debtors' assets in order to satisfy their debts. These activities by Joiner and Williamson began on or about January 25, 2002, and continued through approximately July 24, 2003.

In August 2003, a federal grand jury charged Williamson and Joiner with conspiring to injure judicial officers in their property, in violation of 18 U.S.C. § 372. Williamson alone was charged in a second count of corruptly endeavoring to intimidate a federal prosecutor in the discharge of her official duties, in violation of

18 U.S.C. § 1503(a). The matter proceeded to trial where Williamson elected to retain his court-appointed attorney. Joiner, however, invoked his right to self-representation and expressly waived his right to a court-appointed attorney. After instructing Joiner as to his rights and cautioning him as to procedural matters, the court granted Joiner's request to represent himself, but retained Joiner's court-appointed attorney as stand-by counsel. Williamson moved to sever his trial from that of Joiner, but the district court denied his motion.

At trial, the government called, among other witnesses, Ms. Bedwell, Mr. York, and Special Agent Jim Lunsford, an investigator with the Treasury Department. Agent Lunsford testified he interviewed Williamson and Joiner at FCI-Forrest City. According to Agent Lunsford, the defendants told him they filed "UCC liens" against the alleged debtors because of their involvement in Williamson's prosecution. He testified Joiner informed him their objective was to wreck the alleged debtors' credit and to take their houses. Williamson informed Agent Lunsford that once Ms. Bedwell paid the amount of the lien he believed he would get out of prison. Following the government's case-in-chief, the defendants moved for a judgment of acquittal. When the district court denied the motion, Williamson and Joiner rested without presenting evidence. Williamson requested a jury instruction on the defense of legal impossibility, which the district court denied. A jury convicted them on all counts. They thereafter filed a timely notice of appeal, Fed. R. App. P. 4(b), and we exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

II

Williamson and Joiner raise a number of issues on appeal. They argue, collectively, that the district court erred by not dismissing the charge of conspiracy to injure judicial officers in their property. Williamson argues, individually, there was insufficient evidence to sustain a conviction for corruptly endeavoring to intimidate a judicial officer in the discharge of her official duties. He further

contends the district court erred by not granting his motion for severance, by failing to instruct the jury on the defense of legal impossibility, and by enhancing his guideline sentencing pursuant to U.S.S.G. § 3A1.2. Joiner, individually, also raised various issues in a brief submitted *pro se.* We address each of these arguments below.

A

Williamson and Joiner allege the district court committed error by refusing to dismiss the charge of conspiracy to injure judicial officers in their property because the government could not show any "property" of the alleged debtors injured. 18 U.S.C. § 372 (criminalizing conduct where two or more persons conspire to injure an officer of United States in his person or property on account of the lawful discharge of their duties). In response, the government argues the proof developed at trial shows Williamson and Joiner conspired to injure the alleged debtors in their real property and credit. The defendants argue credit is not property within the meaning of § 372, but we need not decide this question because we find real estate is property within the meaning of the statute.

The defendants argue they could not have "injured" the alleged debtors' real property with UCC Financing Statements because the UCC does not apply to real property and, even if it did, the Arkansas filings would have no effect on the Alabama property at issue. While they correctly state the limited legal scope of the UCC, their argument is unpersuasive. The fact the defendants were, or ultimately would have been, unsuccessful in their endeavor is irrelevant to the analysis. See United States v. Littlefield, 594 F.3d 682, 684 (8th Cir. 1979) ("A conspiracy is a partnership in crime. It has ingredients, as well as implications, distinct from the completion of the unlawful project." (internal citation and quotation omitted)). Although the defendants were naive to believe their UCC Financing Statements could create a lien on real estate, this does not change the fact they were conspiring to place liens on the alleged

debtors' real property. In other words, the crime here is accomplished, not by actually causing an injury, but by "conspiring to injure." Id. ("It is also settled doctrine that the crime of conspiracy is complete on the agreement to violate the law as implemented by one or more overt acts, however innocent such act standing alone may be, and it is not dependent on the success or failure of the planned scheme.").

In terms of the conspiracy, Joiner argues the government failed to prove it was formed to accomplish an illegal purpose. United States v. Hayes, 391 F.3d 958, 961 (8th Cir. 2004) (stating that, to convict a defendant on a conspiracy charge, the government must prove, among other things, the existence of an agreement among two or more people to accomplish an illegal purpose). Joiner argues the government did not prove Williamson and Joiner entered into an agreement for an illegal purpose because UCC Financing Statements are simply notices of money owed, not liens against property, and thus cannot injury property, a requirement under the substantive offense of 18 U.S.C. § 372. The argument here once again misses its mark. Perhaps Williamson and Joiner chose the wrong means to go about accomplishing their objective, but conspiring to file unfounded liens against prosecutors and judges in retaliation for a criminal conviction is nonetheless an illegal purpose.

B

Williamson alone was charged and convicted under the "catchall" obstruction of justice provision of 18 U.S.C. § 1503(a). This provision makes it a crime to corruptly endeavor to intimidate a judicial officer in the discharge of her official duties. "A conviction under this provision requires proof of a sufficient nexus between the defendant's actions and an intent to impede judicial proceedings." United States v. Russell, 234 F.3d 404, 407 (8th Cir. 2000). "According to the 'nexus' analysis, 'the act must have a relationship in time, causation, or logic with the judicial proceedings.'" United States v. Novak, 217 F.3d 566, 572 n.11 (8th Cir. 2000) (quoting United States v. Aguilar, 515 U.S. 593, 599 (1995)).

-6-

Williamson contends the government failed to prove a nexus between the UCC filing and the discharge of the victim's official duties because the case was on appeal and the victim, Ms. Bedwell, was no longer handling it. Ms. Bedwell, he argues, only received the filing two days before the appellate court resolved the appeal, thus there was no temporal or causative connection to her official duties.

His argument, at its core, essentially seeks to overturn the jury's verdict, which is, of course, a difficult burden for him to meet. United States v. Patten, 397 F.3d 1100, 1102 (8th Cir. 2005) ("We will reverse only if the jury must have had a reasonable doubt concerning one of the essential elements of the crime." (internal citation and quotation omitted)). We believe the jury logically could infer a nexus between the UCC Financing Statements and Bedwell's duties simply from the fact she prosecuted him and the case remained pending on appeal. See Aguilar, 515 U.S. at 599 (declaring the statute only requires an endeavor to obstruct a judicial proceeding, it does not require a successful endeavor). Although she was not personally handling the appeal, the possibility remained the case could have been remanded to the district court where she would once again be responsible for the case. See United States v. Flemming, 215 F.3d 930, 937 (9th Cir. 2000) (upholding a § 1503 conviction where the actions were taken against the trial judge while the case was on appeal).

C

Next, Williamson argues the district court abused its discretion by denying his motion to sever his trial from that of Joiner. United States v. Flores, 362 F.3d 1030, 1039 (8th Cir. 2004) (reviewing a denial of motion for severance for abuse of discretion). Generally, co-defendants charged with a conspiracy should be tried together because a joint trial gives "the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome." Id. Despite the preference for joint trials, the district court has the discretion to order severance under

Fed. R. Crim. P. 14 if the defendant will be prejudiced by the joinder, such as by mutually antagonistic defenses. Id.

"Mutually antagonistic defenses exist when the jury must disbelieve the core of one defense in order to believe the core of the other." Id. at 1040. However, even the existence of mutually antagonistic defenses is not *per se* prejudicial. Id. A defendant must show a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id.

Williamson contends his and Joiner's defenses were mutually antagonistic and the joint trial compromised his specific trial right to confront his accuser. At trial, Williamson vigorously disputed the government's accusations, asserting Joiner alone was responsible for all the UCC Financing Statements. For his part, Joiner did not dispute the allegations, he simply used the courtroom as a soapbox to tell the story of what he believed to be his and Williamson's wrongful prior convictions. During Joiner's *pro se* opening statement, closing statement and cross-examination of witnesses he made several comments implicating Williamson and used the first person plural term "we" while admitting to the allegations.

Because Williamson was not able to cross-examine Joiner regarding these comments, he claims his joint trial compromised his right to confront his accuser as that right was articulated in Bruton v. United States, 391 U.S. 123, 126-37 (1968). The district court instructed the jury that statements, arguments, questions and comments made by litigants representing themselves are not evidence, and "[w]e routinely assume that juries follow the court's instructions," Gray v. Bowersox, 281 F.3d 749, 758 (8th Cir. 2002). With Bruton error, however, if this case indeed presents such error, a limiting instruction is often constitutionally insufficient. See United States v. Coleman, 349 F.3d 1047, 1086 (8th Cir. 2003). But we need not decide these questions because, even if the jury instruction did not remedy the

-8-

potential <u>Bruton</u> problem, any error was harmless beyond a reasonable doubt. <u>Coleman</u>, 349 F.3d at 1086-87 ("It is well-established that a <u>Bruton</u> error is subject to harmless-error analysis."). The government introduced evidence Williamson admitted to acting in concert with Joiner, and introduced UCC Financing Statements bearing his signature. Therefore, in view of the overwhelming evidence of guilt, Williamson's argument fails.

D

Williamson appeals the district court's denial of his requested jury instruction on the defense of legal impossibility. <u>United States v. Sobrilski</u>, 127 F.3d 669, 674 (8th Cir. 1997) (en banc) ("Legal impossibility occurs when the actions which the defendant performs or sets in motion, even if fully carried out as he desires, would not constitute a crime."). Even if we assume, *arguendo*, legal impossibility is a defense to a conspiracy charge, we find the district court did not abuse its discretion in refusing to instruct the jury on this defense, <u>United States v. Willis</u>, 277 F.3d 1026 (8th Cir. 2002) (stating that a district court's instructions are reviewed for an abuse of discretion), because the evidence did not support the requested instruction. <u>United States v. Hatcher</u>, 323 F.3d 666 (8th Cir. 2003).

The evidence at trial showed Williamson's objective was to place a lien on the real property of the alleged debtors. He claims his actions, even if fully carried out as desired, would not constitute a crime because of the UCC's inapplicability to real property. Despite his contentions, however, his objective if fully carried out as desired would be prohibited by law because he had no right to place liens on the real property of the alleged debtors. Fortunately, a circumstance unknown to him, the UCC's inapplicability to real property, prevented him from bringing about his objective. His objective, therefore, was not legally impossible, but factually impossible, <u>Sobrilski</u>, 127 F.3d at 674 ("Factual impossibility occurs when the objective of the defendant is proscribed by the criminal law but a circumstance

unknown to the actor prevents him from bringing about that objective."), and factual impossibility is not a defense to the charge of conspiracy, Fleming, 215 F.3d at 936 ("Factual impossibility is not a defense to an inchoate offense" such as conspiracy or attempt.).

E

Finally, Williamson appeals the district court's decision to impose a three-level enhancement to his Guideline offense level pursuant to U.S.S.G. § 3A1.2(a) because of his victim's official status as a government officer or employee. He argues this enhancement constitutes impermissible double counting because his statute of conviction, § 1503(a), makes it a crime to conspire against government officials, and therefore the base offense level to U.S.S.G. § 2J1.2 (the guideline applicable to § 1503(a) offenses) takes into account the official status of his victim.

"Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been . . . accounted for by application of another part of the Guidelines." United States v. Fortney, 357 F.3d 818, 821-22 (8th Cir. 2004). This is not the situation we face here. Although his offense of conviction, § 1503, incorporates the official status of his victim, the question is not whether the statute of conviction specifically incorporates the elements of the disputed enhancement, but whether the applicable guideline specifically incorporates it. United States v. Salim, 287 F. Supp. 2d 250, 308 (S.D.N.Y. 2003). Here, the applicable guideline, § 2J1.2, is the guideline generally applicable to obstruction of justice offenses. It does not take into consideration the fact a defendant's conduct was motivated by the official status of the victim. An enhancement under § 3A1.2 was therefore appropriate and not impermissible double counting.

## F

Joiner supplemented counsel's brief with a brief prepared *pro se*. Joiner lists a number of issues in the *pro se* brief, but it does not contain argument or, for the most  part, authoritative citation as required by Fed. R. App. P. 28. We therefore deem these issues abandoned. See United States v. Eldeeb, 20 F.3d 841, 843 (8th Cir. 1994) (quoting Jasperson v. Purolator Courier Corp., 765 F.2d 736, 740 (8th Cir. 1985) ("[A] party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue."). Even if we were to exercise our discretion to consider abandoned issues, we find none which merit relief.

## III

We affirm the judgement of the district court.

_____