UNITED STATES, Appellant,

v.

Timothy B. GIBSON, Corporal,
U.S. Army, Appellee.

No. 98–5030.
Crim.App. No. 9600274.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 10, 1999.

Decided Aug. 2, 1999.

GIERKE, J., delivered the opinion of the Court, in which COX, C.J., and SULLIVAN, CRAWFORD, and EFFRON, JJ., joined.

For Appellant: *Captain Mary E. Braisted* (argued); *Colonel Russell S. Estey* and *Captain Joel A. Novak* (on brief); *Colonel Joseph E. Ross.*

For Appellee: *Captain Jodi E. Terwilliger–Stacey* (argued); *Colonel John T. Phelps, II* and *Major Holly S.G. Coffey* (on brief); *Lieutenant Colonel Adele H. Odegard* and *Captain Kirsten Campbell–Brunson.*

*Judge GIERKE delivered the opinion of the Court.*

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of rape and adultery, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively. The adjudged and approved sentence provides for a dishonorable discharge, confinement for 12 years, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals set aside the findings and sentence on the ground that appellant did not receive effective representation. The Judge Advocate General of the Army certified the following issues:

I

WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED IN FINDING INEFFECTIVE ASSISTANCE OF COUNSEL ON THE BASIS OF TRIAL DEFENSE COUNSELS' FAILURE TO LEARN OF WITNESSES WHO MIGHT HAVE IMPEACHED THE PROSECUTRIX'S VERACITY, WHERE THERE WAS OVERWHELMING AND UNREBUTTED INDEPENDENT EVIDENCE THAT APPELLANT, A MARRIED MAN, AND THE 15-YEAR-OLD PROSECUTRIX WHO WAS NOT HIS SPOUSE, UNDRESSED IN HIS VEHICLE DURING DAYLIGHT HOURS AND ENGAGED IN SEXUAL RELATIONS.

II

WHETHER, ASSUMING THE ARMY COURT OF CRIMINAL APPEALS CORRECTLY DECIDED THAT DEFENSE COUNSEL WERE INEFFECTIVE IN NOT LEARNING OF WITNESSES WHO MIGHT HAVE QUESTIONED THE TRUTH OF THE PROSECUTRIX'S ALLEGATIONS AND VERACITY, THAT COURT NONETHELESS ERRED BY SETTING ASIDE ALL FINDINGS OF GUILTY, WHERE THE ALLEGED INEFFECTIVENESS COULD HAVE ONLY CAUSED A REASONABLE DOUBT AS TO SOME ELEMENTS, BUT COULD NOT HAVE CAUSED A REASONABLE DOUBT AS TO THE LESSER–INCLUDED OFFENSES OF CARNAL KNOWLEDGE, INDECENT ACTS (OR LIBERTIES) WITH A CHILD, AND INDECENT ACTS WITH ANOTHER, AND TO THE INDEPENDENT OFFENSE OF ADULTERY.

For the reasons set out below, we answer both certified questions in the negative, and we affirm the decision of the court below.

*Factual Background*

The Court of Criminal Appeals summarized the evidence on the merits as follows:

The government's proof of rape rested primarily on the testimony, and thus the credibility, of the fifteen-year-old victim, L. She stated that she initially noticed appellant because of the music coming from his sport utility vehicle, thought he was nice, and readily accepted his offer of a ride home. Her statements concerning lack of consent and force, while meeting the requirements of legal and factual sufficiency, were far from being overwhelming proof on both issues. Fiber and DNA evidence circumstantially corroborated sexual activity, including an ejaculation, in appellant's vehicle. However, in the absence of direct evidence of penetration, this scientific evidence provided, at best, only tenuous corroboration of that aspect of her allegations.

* * *

Appellant did not take the stand and presented his defense solely through cross-examination of the government's witnesses. The defense theory of the case asserted that there was insufficient evidence to prove, beyond a reasonable doubt, that sexual intercourse occurred, but that if it did occur, it was not through force, but with the consent of L. The emphasis of the defense presentation by cross-examination sought to discredit or reframe the laboratory evidence. The cross-examina-

tion of L focused on resistance and consent.

Unpub. op. at 2–3 (footnotes omitted).

After the trial, appellee's wife obtained a copy of the final Criminal Investigation Command (CID) report, which contained summaries of witness interviews that raised questions about L's credibility. The detailed defense counsel, Captain (CPT) Boyd, then accused trial counsel of failing to disclose material favorable to the defense. The convening authority ordered a post-trial Article 39(a)[1] session to consider the accusation of nondisclosure.

The evidence at issue was a series of interviews with teachers and classmates of the alleged victim that were summarized in the final CID report. They were captioned, "Significant Interviews." The interviews reflect the following information:

(1) L was expelled from school for 1 year, and a teacher suggested that the rape allegation was her way of distracting attention from her misbehavior;

(2) L told some classmates that she was a virgin before the encounter with appellee, and she told others an "off the wall" story about being raped in the United States and becoming pregnant;

(3) L told conflicting versions of the alleged rape by appellee; and

(4) L had a poor reputation for truthfulness among some of her classmates.

At the Article 39(a) session, civilian defense counsel, Mr. Cohen, asserted "as an officer of the court" that neither he nor detailed defense counsel had seen the final CID report. Mr. Cohen asserted that, if he had known about the material in the final CID report, he could have cross-examined L and destroyed the image of a "young schoolgirl who was embarrassed about what happened." On examination by the military judge, Mr. Cohen conceded that, if he had received the final report but failed to read it and attempt to interview the witnesses listed, he was "not merely negligent, but [he] failed to discharge [his] responsibilities as a defense counsel in this case."

Captain (CPT) Flowers was the trial counsel for the case. When the Article 32[2] investigation convened, CPT Flowers was pending deployment to the Balkans, and CPT Vandeveld was detailed to replace him in the event that the case was referred to a court-martial. CPT Flowers testified that, on the day of the Article 32 hearing, he gave CPT Vandeveld the final CID report, who copied it and returned it to him, and then CPT Flowers personally gave it to Mr. Cohen.

During the Article 32 hearing, Mr. Cohen referred to a laboratory report that was contained in the final CID report, but was not included in the initial or interim reports. CPT Flowers testified that the defense made no written discovery requests before the Article 32 investigation. A tape recording of the Article 32 hearing was played at the Article 39(a) session, in which Mr. Cohen referred to a serology report contained in the final CID report.

The laboratory report was in two parts, a trace evidence report and a serology report. The trace evidence report concluded that fibers found on two pairs of L's panties were microscopically consistent with the fabric in appellee's vehicle. The serology report concluded that there was semen on appellee's underwear and on a blue towel found in appellee's vehicle. The semen matched appellee's DNA profile. There was no semen found in vaginal and cervical swabs taken from L, on L's clothing, or in a condom found in appellee's vehicle.

CPT Boyd testified that the laboratory report was in his case file at the time of the Article 32 investigation. He testified that he became "physically ill" when he read the summarized witness statements pertaining to L's credibility. CPT Boyd also testified that CPT Flowers had an open discovery policy, and that "you could walk in anytime and ask him and he'd give you anything he had."

Mr. Cohen testified that, when he read the final report, he was shocked. He thought

---

1. Uniform Code of Military Justice, 10 USC § 839(a).

2. UCMJ, 10 USC § 832.

that appellee had been unjustly convicted because Mr. Cohen "had failed to properly either investigate or to get materials."

The military judge made the following findings of fact:

1. The final CID report, dated 21 September 1995, was received by trial counsel in early October 1995.

2. Detailed defense counsel, CPT Boyd, had complete access to the entire government case file at all times.

3. Before the Article 32 Investigation, on 13 November 1995, CPT Boyd may not yet have been provided a copy of the final CID report, but it had been available for defense to review and photocopy for about a month.

4. At the Article 32 Investigation, CPT Flowers directed that a complete copy of the case file, including the final CID report be photocopied for Mr. Cohen. CPT Vandeveld copied the case file and returned it to CPT Flowers who personally handed the complete case file to Mr. Cohen.

5. The final CID report looks very much like the interim CID report, and much of the final report is identical to the interim report. The several new paragraphs, at issue here, were sandwiched between such identical entries. When CPT Boyd read the final report after trial she testified that at first she thought it was the report she had already read.

6. The final CID report referenced, and has as attachments, photographs and certain lab reports that were not previously available or disclosed, including a trace evidence/serology report dated 29 August 1995.

7. CPT Flowers' testimony, that he gave to Mr. Cohen a complete copy of the case file, to include the final CID report, is corroborated by the audio recording of the Article 32 in which he is heard to say to Mr. Cohen, "I think I've given y'all every scrap of paper on this case . . .," and then confirmed that defense had received the lab reports dated 29 August.

8. Both before and after the Article 32 Investigation, CPT Flowers made available to the defense everything in the government's case file, including witness statements, witness lists, CID reports, lab reports, photos, and physical evidence. CPT Flowers had this "open discovery" procedure, in this and every other case, and the defense was aware of it.

9. There was no evidence presented as to where SSG Gibson, wife of the accused, acquired the copy of the final CID report.

10. The defense received complete discovery of all documents in the government's possession, including the final CID report, but apparently did not recognize a few paragraphs in that final CID report that were added to the interim report.

Based on the evidence adduced at the post-trial Article 39(a) session, the Court of Criminal Appeals concluded that appellee had not received effective representation within the meaning of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). On the question of prejudice, the court below held:

> [T]his was legally and factually a close case. The government's proof relied heavily on the testimony, and therefore the credibility, of the victim, L. Thus, the testing of the government's proof by counsel in the form of a thorough, focused cross-examination of L, was pivotal to the effective defense of [appellee]. Overlooking, or failing to pursue, the statements of nine potential adult and juvenile witnesses questioning the truth of L's allegations, as well as her general veracity, cannot be viewed as harmless, non-prejudicial error.

Unpub. op. at 7. The court then set aside the findings and sentence and authorized a rehearing.

## Discussion

Before this Court, the Government argues that "defense counsel's failure to notice the slight differences in the Final CID Report during the Article 32 investigation did not depart from prevailing norms to such an extent that the adversarial process failed." Final Brief at 20. Government appellate counsel point out that the list of witnesses was contained within a pile of "approximately sixty papers, about two inches thick." *Id.* at

5. They argue that the deficiencies in the defense performance were not prejudicial because "the government's case . . . was virtually incontrovertible [sic]." *Id.* at 6. Finally, the Government argues that the evidence of penetration needed to prove carnal knowledge was "irrefutable," and that, at the very least, the court below should have affirmed a lesser-included offense of carnal knowledge or indecent acts, as well as the conviction of adultery. *Id.* at 28.

Appellee asserts that the failure of trial defense counsel to investigate the evidence summarized in the CID report left the alleged victim's testimony unchallenged and, thus, made the outcome of the court-martial unreliable. Answer to Final Brief at 3–4.

■ This Court has adopted the two-pronged test of *Strickland* to determine if an accused has received the "effective assistance of counsel" guaranteed by the Sixth Amendment. *United States v. Scott,* 24 MJ 186, 188 (CMA 1987). Counsel are presumed competent. *Id.* To prevail on a claim of ineffective representation, an accused must show (1) deficient performance and (2) prejudice. *Id.*

Regarding the first prong, the Supreme Court has held that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland, supra* at 691, 104 S.Ct. 2052, quoted in *United States v. Loving,* 41 MJ 213, 242 (1994); *see also United States v. Polk,* 32 MJ 150, 153 (CMA 1991). Both military and civilian counsel conceded during the post-trial hearing that their failure to investigate would satisfy the first prong of *Strickland,* if they received the final CID report. The military judge found that they received the report, and the record supports his findings.

■ We agree with military and civilian defense counsel's concession of deficient performance. Their failure to investigate information strongly suggesting that L was not a credible witness was deficient within the meaning of the first prong of *Strickland.* Their failure to investigate was not a tactical decision; it was a serious oversight caused by their failure to carefully read the final CID report.

■ With respect to the second prong, we agree with the court below that defense counsel's failure to investigate the evidence in the CID report deprived appellee of "a fair trial, a trial whose result is reliable." Unpub. op. at 7, quoting *Scott,* 24 MJ at 188, and *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. The prosecution's case rested on L's credibility. The evidence summarized in the CID report suggested that she had serious disciplinary problems in school; that she may have alleged rape to distract school officials from her behavior; that she had a record of exaggerating her sexual experience; that she related conflicting versions of the alleged rape; and that she did not enjoy a good reputation for truthfulness. This evidence was relevant not only to the greater offense of rape, but also to the lesser-included offense of carnal knowledge and the related offense of adultery, because her testimony was the only direct evidence of vaginal penetration.

■ We reject the Government's fallback argument that the court below erred by not affirming a conviction of indecent acts. Under Article 66(c), UCMJ, 10 USC § 866(c)(1994), a Court of Criminal Appeals "may affirm only such findings of guilty . . . as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Commenting on this broad grant of appellate authority, our Court has said, "A clearer *carte blanche* to do justice would be difficult to express." *United States v. Claxton,* 32 MJ 159, 162 (1991). Our Court explained: "If the Court of Military Review [now the Court of Criminal Appeals], in the interest of justice, determines that a certain finding or sentence should not be approved—by reason of the receipt of improper testimony or otherwise—the court need not approve such finding or sentence." *Id.* In *United States v. Cauley,* 45 MJ 353, 356 (1996), we declined to disturb a determination regarding factual sufficiency at the trial and at the court below, stating that "factual sufficiency is a question for the fact-finder at [the] court-martial and the Court of Criminal Appeals, not this Court."

We hold that the court below did not abuse the discretion given to it by Article 66(c). Proof of indecent acts depended almost entirely on L's testimony. The fiber evidence was of marginal value. There was no evidence that the fiber from the seat cover was unique or rare. Traces of the same or similar fiber were also found on a second pair of L's panties that she was not wearing at the time of the alleged offenses. The semen on the towel shows only that appellant ejaculated at some time and place, but tells us nothing about the circumstances. The scientific evidence had corroborative value when combined with L's testimony. Standing alone, however, it proves little. In light of the broad appellate authority conferred on the court below by Article 66(c), and the importance of L's testimony in proving any lesser-included offenses, the decision of the court below to not affirm a lesser-included offense was within its statutory authority. The certified questions are answered in the negative.

### Decision

The decision of the United States Army Court of Criminal Appeals setting aside the findings and sentence is affirmed.