UNITED STATES, Appellee

v.

Gregory G. RORIE, Specialist
U.S. Army, Appellant

No. 02-0949

Crim. App. No. 20000964

United States Court of Appeals for the Armed Forces

Argued April 8, 2003

Decided July 1, 2003

ERDMANN, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and GIERKE, J., joined. EFFRON, J., filed a
separate dissenting opinion in which BAKER, J., joined.

Counsel

For Appellant: Lieutenant Colonel E. Allen Chandler, Jr.
(argued); Colonel Robert D. Teetsel and Major Jeanette K.
Stone (on brief); and Captain Fansu Ku.

For Appellee: Captain Christopher Graveline (argued); Lieutenant
Colonel Margaret B. Baines, Lieutenant Colonel Lauren B.
Leeker, and Major Jennifer H. McGee (on brief).

Amicus Curiae: Ming-Hsuan Chung (law student)(argued); Cary
Berkeley Kaye, Esq. (supervising attorney), Steven H.
Goldblatt, Esq. (director), and Scott Weidenfeller (law
student)(on brief) – For the Georgetown University Law
Center, Appellate Litigation Program.

Amicus Curiae: Eugene R. Fidell, Esq. (argued); Kevin J. Barry,
Esq., Stephen A. Saltzburg, Esq. and Philip D. Cave, Esq. (on
brief) – For the National Institute of Military Justice.

Amicus Curiae: Lieutenant Frank L. Gatto, JAGC, USNR (argued)
Colonel R. M. Favors, USMC (on brief) – For the Appellate
Government Division, Navy-Marine Corps Appellate Review
Activity.

Military Judge: Michael J. Hargis

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Judge ERDMANN delivered the opinion of the Court.

Appellant, Specialist Gregory G. Rorie, was tried by general court-martial at Fort Polk, Louisiana. Pursuant to his pleas, he was convicted of three specifications of wrongful distribution of cocaine in violation of Article 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 912a (2000). Appellant was sentenced to confinement for two years and reduction to the grade of Private E-1. On June 8, 2001, the convening authority approved the sentence. On June 28, 2002, the Army Court of Criminal Appeals affirmed the findings and sentence in a memorandum decision. United States v. Rorie, ARMY 20000964 (A. Ct. Crim. App. June 28, 2002).

Appellant died on August 31, 2002. On September 27, 2002, Appellant's detailed appellate defense counsel filed a Petition for Grant of Review and a Motion to Abate with this Court. Upon consideration of the Petition for Grant of Review and the Motion to Abate, we specified and ordered briefs on the following two issues:

ISSUE I

WHETHER THE FILING OF A PETITION FOR GRANT OF REVIEW BY APPELLATE DEFENSE COUNSEL WAS SUFFICIENT TO CONFER JURISDICTION ON THIS COURT OR WHETHER JURISDICTION WAS RETAINED BY THE UNITED STATES ARMY COURT OF CRIMINAL APPEALS.

ISSUE II

IN THE EVENT THAT THIS COURT DOES HAVE JURISDICTION, WHETHER THE PROCEEDINGS SHOULD BE ABATED.

Prior to argument the parties agreed that this Court had jurisdiction over the question of whether the proceedings and

2

conviction in this case should be abated ab initio.  Therefore, we proceed directly to consideration of the second specified issue.  For the reasons that follow, we hold that abatement ab initio is neither appropriate nor required at this Court.


FACTS

The United States Army Court of Criminal Appeals reviewed Appellant's conviction and affirmed the findings and sentence in a memorandum decision on June 28, 2002.  On July 1, 2002, Appellant's initial appellate defense counsel prepared correspondence to Appellant advising him that the Army court had rendered a decision in his case.  On July 5, 2002, the Deputy Clerk of the Army court sent notice of the Army court decision to Appellant by certified mail, return receipt requested.

On July 12, 2002, the United States Postal Service returned the certified mail with the notation "Forward Time Exp Rtn to Send."  Constructive service was therefore effected on July 5, 2002, as the appellate defense counsel had received a copy of the decision and the decision had been deposited in the United States mail to Appellant on that date.  Article 67(b)(2), UCMJ, 10 U.S.C. § 867(b)(2) (2000).

Appellant had 60 days within which to petition this Court for a grant of review, a period that would have expired on September 3, 2002.  On August 31, 2002, Appellant sustained massive head trauma in an automobile accident and died.  Upon learning of Appellant's death, appellate defense counsel sought and obtained a copy of the death certificate.  Subsequently, on

September 27, 2002, appellate defense counsel filed a Petition for Grant of Review and a Motion to Abate the proceedings.

Upon consideration of the Petition for Grant of Review and the Motion to Abate, this Court specified the previously noted issues and directed that the parties file briefs.

BACKGROUND

Principals of Abatement ab initio

Appellant's motion for abatement rests upon the general concept that the death of an accused after conviction but before completion of an appeal of right abates the entire proceeding from its inception.  If granted, abatement ab initio has the effect of "eliminating or nullifying" the proceeding or conviction "for a reason unrelated to the merits" of the case. Black's Law Dictionary 2 (7th ed. 1999).  "[I]t is as if the defendant had never been indicted and convicted."  United States v. Logal, 106 F.3d 1547, 1551-52 (11th Cir. 1997).

Two reasons are commonly advanced in support of abatement ab initio upon the death of a criminal defendant/appellant.  The first reason advanced relates to the interests of justice.  The 7th Circuit Court of Appeals has noted that "the interests of justice ordinarily require that [a defendant] not stand convicted without resolution of the merits of his appeal" and echoed the Supreme Court's view that such an appeal "is an 'integral part of [our] system for finally adjudicating  [the] guilt or innocence [of a defendant]'."  United States v. Moehlenkamp, 557 F.2d 126, 128 (7th Cir. 1977)(quoting Griffin v. Illinois, 351 U.S. 12, 18

4

(1956)).  See also United States v. Pogue, 19 F.3d 663, 665-66
(D.C. Cir. 1994).

Death arguably disrupts appellate adjudication and may leave
an unreviewed conviction that is unsound, unlawful, or unjust.
Confidence may be lacking in such convictions; they should not
serve as the basis for finality.  See Logal, 106 F.3d at 1552
("[A] criminal conviction is not final until resolution of the
defendant's appeal as a matter of right"); Pogue, 19 F.3d at 665-
66 (rejecting arguments against abatement ab initio even when the
conviction is based on a guilty plea).  Thus, where "death has
deprived the accused of his right to [an appellate] decision,"
abatement serves the interests of justice by removing criminal
convictions that do not have the necessary basis for confidence
to support finality.  Moehlenkamp, 557 F.2d at 128.

The second reason advanced is that the penal purposes of a
criminal proceeding are defeated by the death of the defendant.
Charges, trial, conviction, and sentences are directed at and
punish the individual.  Those purposes can not be served after
the defendant has passed away.  See United States v. Asset, 990
F.2d 208, 211 (5th Cir. 1993); United States v. Pomeroy, 152 F.
279, 282 (C.C.S.D.N.Y. 1907).  "[S]huffling off the mortal coil
completely forecloses punishment, incarceration, or
rehabilitation, this side of the grave at any rate."  United
States v. Dudley, 739 F.2d 175, 177 (4th Cir. 1984).

## Application by Federal and State Courts

Nonetheless, abatement is not the universal policy in the
federal and state courts.  For a number of years, the United

States Supreme Court's position on abatement lacked clarity.[1] In

Durham v. United States, 401 U.S. 481 (1971), the Court

acknowledged its previous "ambiguity," id. at 482, and adopted

the policy of abatement ab initio:

> The unanimity of the lower federal courts
> which have worked with this problem over the
> years . . . is impressive.  We believe they
> have adopted the correct rule.  Accordingly,
> the motion for leave to proceed in forma
> pauperis and the petition for a writ of
> certiorari are granted.  The judgment below
> is vacated and the case is remanded to the
> District Court with directions to dismiss the
> indictment.

Id. at 483.  Justice Blackmun dissented.  In his dissent he found

a significant distinction in that the decedent was not exercising

an appeal of right.  Id. at 484 (Blackmun, J., dissenting).

A few years later and without discussion, the Supreme Court

abruptly changed its position on abatement in Dove v. United

States, 423 U.S. 325 (1976).  The entire opinion of the Court

consisted of the following:

> The Court is advised that the petitioner died at New Bern,
> N.C., on November 14, 1975.  The petition for certiorari is
> therefore dismissed.  To the extent that Durham v. United
> States, 401 U.S. 481 (1971), may be inconsistent with this
> ruling, Durham is overruled.

Id. at 325.  While the appeal to the Supreme Court was dismissed,

the underlying criminal conviction was left intact.  Thus,

---

[1] See, e.g., Singer v. United States, 323 U.S. 338, 346
(1945)(Court dismissed writ and "remanded to the District Court
for such disposition as law and justice require."); United States
v. Johnson, 319 U.S. 503, 520 n.1 (1943)(dismissed writ and left
"disposition of the fine that was imposed to the Circuit Court of
Appeals."); Menken v. Atlanta, 131 U.S. 405, 405
(1889)(considered the cause "abated" and ordered writ of error
dismissed); List v. Pennsylvania, 131 U.S. 396, 396 (1888)("cause
has abated").

abatement ab initio has not been a policy at the United States Supreme Court since 1976.

On the other hand, the Federal Circuit Courts of Appeals unanimously apply the policy when an accused dies before those courts complete appellate review of a federal conviction.[2]  The circuit courts have adhered to a policy of abatement ab initio despite the Supreme Court's decision in Dove, largely on the basis that an appeal to the circuit court is a matter of right,

---

[2] See United States v. Wright, 160 F.3d 905, 908 (2d Cir. 1998)("[W]e normally vacate the judgment and remand to the district court with instructions to dismiss the indictment."); United States v. Christopher, 273 F.3d 294, 297 (3d Cir. 2001)("The rule of abatement is well established, and we adopt it as the law in this Court.  Thus, where a convicted criminal defendant dies after filing an appropriate appeal, the conviction will be abated and the case remanded to the District Court with instructions to dismiss the indictment."); United States v. Dudley, 739 F.2d 175, 176 (4th Cir. 1984)("requiring ultimately that case be remanded . . . with direction to vacate ab initio, as abated, the criminal proceedings."); United States v. Asset, 990 F.2d 208, 210 (5th Cir. 1993)("It is well established in this circuit that the death of a criminal defendant pending an appeal of his of her case abates, ab initio, the entire criminal proceeding."); United States v. Toney, 527 F.2d 716, 720 (6th Cir. 1975)(conviction vacated and "remand[ed] the cause to the District Judge with instructions to dismiss the indictment against" the accused.); United States v. Moehlenkamp, 557 F.2d 126, 128 (7th Cir. 1977)(court followed its "established practice by dismissing [the] appeal as moot, vacating the conviction . . . , and remanding the case to the district court for dismissal of the outstanding indictment[.]"); United States v. Littlefield, 594 F.2d 682, 683 (8th Cir. 1979)("The death of a defendant in a criminal case during the pendency of an appeal renders moot the appeal and abates the cause against the deceased[.]"); D'Argento v. United States, 353 F.2d 327, 328 (9th Cir. 1965)("[T]he prosecution abates on the death of the defendant."); United States v. Davis, 953 F.2d 1482, 1486 (10th Cir. 1992)("dismiss [the] appeal and remand the criminal judgment . . . to the district court with instructions to vacate the judgment and dismiss the underlying indictment."); United States v. Logal, 106 F.3d 1547, 1551-52 (11th Cir. 1997)("This circuit has adopted the general rule that the death of a defendant during the pendency of his direct appeal renders his conviction and sentence void ab initio; i.e., it is as if the defendant had never been indicted and convicted."); United States v. Pogue, 19 F.3d 663 (D.C. Cir. 1994)(adopting the general  policy of abatement ab initio).

whereas certiorari is discretionary review before the Supreme Court.  See, e.g., United States v. Christopher, 273 F.3d 294, 296 (3d Cir. 2001); United States v. Pauline, 625 F.2d 684, 685 (5th Cir. 1980); Moehlenkamp, 557 F.2d at 128.

The determination of whether and how much of a criminal conviction to abate in the state courts varies considerably, with most courts adopting some form of abatement.[3]  It is worth noting, however, that a number of states have recently changed their policies, moving away from abatement ad initio.  See, e.g., State v. Salazar, 945 P.2d 996, 1003 (N.M. 1997)(noting that several states have substantially changed or abandoned their policies of abatement ab initio); State v. Clements, 668 So.2d 980 (Fla. 1996); State v. Makaila, 897 P.2d 967 (Haw. 1995); People v. Peters, 537 N.W.2d 160 (Mich. 1995).

### Application by this Court

This Court has followed the policy of abatement ab initio since 1953.  In United States v. Mosher, 14 C.M.R. 229 (C.M.A. 1953)(summary disposition), we noted that the petitioner was

---

[3] Tim A. Thomas, Annotation, Abatement of State Criminal Case by Accused's Death Pending Appeal of Conviction – Modern Cases, 80 A.L.R.4th 189, 191-200 (1990 & Supp. 2002), identified seven categories of state court policies on abatement: abatement ab initio when a defendant/appellant dies pending resolution of his appeal; abatement ab initio where the appeal in issue is an appeal of right; abatement ab initio where the court has granted a discretionary application for review, thereafter treating the case as if the appellant had been given an appeal of right; the case is not abated and the appeal may be prosecuted;  the case is not abated ab initio, but the appeal may not be prosecuted; a personal representative may be substituted to avoid abatement ab initio; or, the appeal abates without the superior court addressing whether the proceedings are abated ab initio.

deceased and "ordered that this cause be, and the same is, hereby abated, and it is further ordered that the Petition for Grant of Review be, and the same is, hereby dismissed." Since these early cases, we have routinely applied the policy of abatement ab initio in summary fashion when an appellant died while his case was pending at this Court.[4]

In United States v. Kuskie, 11 M.J. 253 (C.M.A. 1981), we specifically addressed the question of whether cases pending before this Court should be abated ab initio when a petitioner/appellant dies. This Court adhered to the policy of abatement ab initio and distinguished our review authority from that of the United States Supreme Court:

> It is true that this Court has referred to itself as "the supreme court of the military judicial system." McPhail v. United States, 1 M.J. 457, 462 (C.M.A. 1976). Such a characterization in itself, however, is not sufficient to equate a military accused's right to petition this Court for review with a petition for certiorari to the Supreme Court. Such an equation ignores the substantial differences in statutory language between Article 67(b)(3) and 28 U.S.C. 1254(1). See 28 U.S.C. 1291. Moreover, it is indifferent to the critical role this Court plays in direct review of courts-martial (Noyd v. Bond, 395 U.S. 683, 694, 89 S.Ct. 1876, 1882, 23 L.Ed.2d 631 (1969)) as the court of last resort in the military justice system. Schlesinger v. Councilman, 420 U.S. 738, 751, 95 S.Ct. 1300, 1309, 43 L.Ed.2d 591 (1975). Such distinctions are central to a proper understanding of the Dove decision. United States v. Pauline, 625 F.2d

---

[4] See, e.g., United States v. McGill, 55 M.J. 462 (C.A.A.F. 2001)(summary disposition); United States v. Brown, 34 M.J. 22 (C.M.A. 1991)(summary disposition); United States v. Flannigan, 6 M.J. 157 (C.M.A. 1978)(summary disposition); United States v. Johnson, 3 M.J. 391 (C.M.A. 1977)(summary disposition); United States v. Ferguson, 23 C.M.A. 699, 50 C.M.R. 905 (1975)(summary disposition).

> 684 (5th Cir. 1980); See Disposition of a
> Federal Criminal Case When Defendant Dies
> Pending Appeal, 13 U.Mich.L.J.Ref. 143, 147-
> 48 (Fall 1979).  Moreover, in cases decided
> by this Court since Dove v. United States,
> supra, we have not adopted this approach to
> the deceased-appellant situation.  See United
> States v. Flannigan, 6 M.J. 157 (C.M.A.
> 1978); United States v. Day, 5 M.J. 998
> (C.M.A. 1976); United States v. Johnson, 3
> M.J. 391 (C.M.A. 1977).

Id. at 254-55 (footnotes omitted).

Nevertheless, this Court's policy on abatement ab initio has not been without dissent.  In Kuskie, Judge Cook disputed that there were "substantial differences" between the Supreme Court's certiorari authority and this Court's petition authority, noting that both had the same "substantive nature as a permissive appeal."  Id. at 256 (Cook, J., dissenting).

The lack of unanimity on this policy was further evidenced in Berry v. The Judges of the United States Army Court of Military Review, 37 M.J. 158 (C.M.A. 1993).  There, a majority of this Court abated Berry's conviction ab initio because the conviction was not final within the meaning of Article 71(c), UCMJ, 10 U.S.C. § 871(c) (2000).  Berry died seven days prior to the expiration of his time within which to petition this Court.  While the majority focused on Article 71, it again rejected the argument that this Court's petition authority was akin to the discretionary nature of certiorari review at the Supreme Court.  Rather, the majority found this Court's authority "more analogous" to that of the Federal Circuit Courts of Appeals.  Id. at 160.

Judges Crawford and Gierke dissented.  In addition to finding the facts of Berry's case to be distinct from those

present in Kuskie, the dissent noted a number of reasons supporting a conclusion that abatement ab initio was not a required consideration at this Court:  (1) appellate jurisdiction of this Court is similar to that of the Supreme Court; (2) finality under Article 71(c) is an administrative matter that has no impact upon determining whether an appeal was of right or discretionary; and (3) the practice in this Court is not "more analogous" to the Federal Circuit Courts of Appeals where the appeal is one of right.  37 M.J. at 162-65 (Crawford, J., with whom Gierke, J., joins, dissenting).

More recently, in United States v. Ward, 54 M.J. 390 (C.A.A.F. 2001), this Court declined to reconsider and abate the proceedings where the appellant died seven days after this Court had issued a decision in his case.  In Ward, the Court focused on the "interests of justice ordinarily require that [a defendant] not stand convicted without resolution of the merits of an appeal."  Id. at 391 (quoting Pogue, 19 F.3d at 665).  We found that the interests of justice were satisfied by "full review" and that "abatement ab initio due only to death" was not required. Id. at 391.

DISCUSSION

Resolution of the issues presented in this case requires not only an inquiry into the principles of abatement ab initio, but also an inquiry into the doctrine of stare decisis, as a change in the Court's position on abatement would overrule established precedent of this Court.

## Abatement ab initio

As noted, case law sets forth two primary reasons in support of the policy of abatement ab initio. The first purpose relates to the interests of justice and dictates that a defendant should "not stand convicted without resolution of the merits of his appeal[.]" Moehlenkamp, 557 F.2d at 128 (citing Griffin, 351 U.S. at 18). See also Pogue, 19 F.3d at 665; Asset, 990 F.2d at 210-11. The post-trial and appellate processes under the Uniform Code of Military Justice afford a military defendant with a clemency review and three levels of appeal following a conviction at the trial level: an initial appeal to a Court of Criminal Appeals; an appeal to this Court; and an appeal to the U.S. Supreme Court. See Articles 60, 66, 67, and 67a, UCMJ, 10 U.S.C. §§ 860, 866, 867, 867a (2000).

We believe that the initial review by a Court of Criminal Appeals provides a military defendant with a substantive legal and factual review. The interests of justice are further enhanced at the Courts of Criminal Appeals by an appellant's broad right to personally assert matters before the military appellate courts. See United States v. Grostefon, 12 M.J. 431 (C.M.A. 1982).

The Courts of Criminal Appeals are unique and are vested great power to do justice. United States v. Gibson, 51 M.J. 198, 202 (C.A.A.F. 1999). We have often expressed our confidence in the Courts of Criminal Appeals and in the ability and expertise of the "experienced and mature judges of the Courts of Criminal Appeals[.]" United States v. Boone, 49 M.J. 187, 195 (C.A.A.F. 1998)(quoting United States v. Cook, 46 M.J. 37, 39 (C.A.A.F.

1997)).  See also United States v. Eversole, 53 M.J. 132, 133 (C.A.A.F. 2000)(expressing confidence in the "expertise" of the Court of Criminal Appeals).

The second purpose advanced for abatement ab initio is that punishment in the criminal arena is personal and the death of the defendant eliminates the purpose of punishment.  See Asset, 990 F.2d at 211; Pomeroy, 152 F. at 282.  Unquestionably, upon the death of a military defendant traditional punishments such as confinement and forfeiture become moot.  However, we believe there remains a substantial punitive interest in preserving otherwise lawful and just military convictions.  For persons serving in uniform who are subject to court-martial and for the Government, military status and the nature of a discharge remain significant considerations.  We do not believe that the death of an appellant following the resolution of an appeal to the Court of Criminal Appeals moots the punitive purposes or substantial interests attached to a bad-conduct discharge, a dishonorable discharge, or a punitive dismissal from the service.

Another consideration to weigh in analyzing this issue is the impact of abatement ab initio on victims' rights.  In 1990 Congress adopted the "Victims of Crime Bill of Rights".  42 U.S.C. § 10606 (2000).  Subsequent to this Court's decisions in Kuskie and Berry, the Department of Defense revised Dep't of Defense, Directive 1030.1, Victim and Witness Assistance (November 23, 1994) [hereinafter Directive 1030.1], to adopt the provisions of 42 U.S.C. § 10606 as matters of Department of Defense policy.  United States v. Spann, 51 M.J. 89, 91 (C.A.A.F.

1999). Directive 1030.1 recognized the role of victims in the criminal justice process and specifically provided:

> Court-martial convening authorities and clemency and parole boards shall consider making restitution to the victim a condition of granting pretrial agreements, reduced sentence, clemency, and parole.

Directive 1030.1, at para. 4.5.

It is not uncommon for pretrial agreements to contain restitution provisions. We also note that adjudged and approved fines, which create a debt, may have compensatory aspects. For example, an adjudged fine may be based upon the fact that an accused was unjustly enriched by offenses against the Government. See Rule for Courts-Martial 1003(b)(3) discussion.

As noted, when abatement ab initio is applied "it is as if the defendant had never been indicted and convicted." Logal, 106 F.3d at 1551-52. Particularly where there has been one level of appeal of right, abatement ab initio at this level frustrates a victim's legitimate interest in restitution and compensation.[5]

We find further support for our decision not to adopt a policy of abatement ab initio in the nature of this Court's petition jurisdiction. The unique statutory jurisdiction of this Court is distinct from both that of the Supreme Court and the Circuit Courts of Appeals. We believe, however, that this Court's petition authority is more akin to the writ authority

---

[5] The Supreme Court of Michigan recently recognized the significance of victims' rights when it substantially modified its own approach to abatement in People v. Peters, 537 N.W.2d 160 (Mich. 1995). The Michigan Supreme Court stated that it was "not persuaded that abatement ab initio, when applied to compensatory sanctions, is consistent with Michigan law since the 1985 enactment of the Michigan Crime Victim's Rights Act[.]" Id. at 161.

exercised by the Supreme Court, particularly with respect to the primary sources of appeals, the writ of certiorari and the petition for grant of review. See 28 U.S.C. §§ 1254(1), 1257; Article 67(a)(3).

While Appellant and Amicus National Institute of Military Justice urged otherwise, there can be little doubt that this Court exercises discretionary review with respect to our petition docket. "[T]he question of what cases are heard by the [Court of Appeals for the Armed Forces] is a matter of internal management, properly left to that Court's decision in accordance with guidelines expressed in that Court's rules." S. Rep. No. 98-53, at 34 (1983).[6] The discretionary nature of this Court's petition jurisdiction is more analogous to the Supreme Court's discretionary certiorari practice. We do not deprive an appellant of any review of right by changing our policy with respect to abatement ab initio.

Circuit courts that have reviewed the policy of abatement ab initio in the context of the Supreme Court's rejection of such a policy have focused on a fundamental difference in the proceedings before the Supreme Court and the circuit courts. Appeals to the Circuit Courts of Appeal are of right. See 28 U.S.C. §§ 1291-1292 (2000). On the other hand, writs of certiorari are granted on a discretionary basis. See 28 U.S.C. §§ 1254, 1257 (2000). Thus, "[t]he prevailing practice of the

---

[6] See also Eugene R. Fidell, Guide to the Rules of Practice and Procedure for the United States Court of Appeals for the Armed Forces 126-28 (10th ed. 2001)(making several references to the discretionary nature of this Court's petition review).

15

Supreme Court to dismiss petitions for certiorari upon the death of the convicted defendant . . . does not readily transfer to the Courts of Appeals." Christopher, 273 F.3d at 296. See also Pauline, 625 F.2d at 685; Moehlenkamp, 557 F.2d at 128.

After the Supreme Court abandoned its policy of abatement ab initio in Dove, a number of courts focused on the nature of the Supreme Court's discretionary certiorari jurisdiction as a critical factor in determining whether to maintain their own policies of abatement. Among the several Circuit Courts of Appeals to look at this aspect of the issue, there was consensus that an appellant's appeal of right to the circuit courts was a substantial distinction that supported maintaining a policy of abatement ab initio. See, e.g., Christopher, 273 F.3d at 296; United States v. Davis, 953 F.2d 1482, 1486 (10th Cir. 1992); United States v. Schumann, 861 F.2d 1234, 1236 n.1 (11th Cir. 1988); Moehlenkamp, 557 F.2d at 128.

Finally, we note that the rule of abatement ab initio is a matter of policy in the Federal courts. It is not mandated by the Constitution or statute, nor have we adopted it as part of the Rules of Practice and Procedure for this Court. Absent direction from Congress or the President on this matter, we are convinced that abatement ab initio is not a policy compelled by the interests of justice or the jurisdictional underpinnings of this Court.

16

## Stare Decisis

We recognize that our holding today is contrary to our existing precedent and are not unmindful of the importance that the doctrine of stare decisis plays in our decision-making.  See United States v. Tualla, 52 M.J. 228, 230-31 (C.A.A.F. 2000); United States v. Boyett, 42 M.J. 150, 154-56 (C.A.A.F. 1995). The doctrine of stare decisis is "the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process."  Payne v. Tennessee, 501 U.S. 808, 827 (1991).

The doctrine plays a key role in a number of areas.  The doctrine is "most compelling" where courts undertake statutory construction.  Hilton v. South Carolina Public Ry. Comm'n, 502 U.S. 197, 205 (1991); Patterson v. McLean Credit Union, 491 U.S. 164, 172 (1989).  It comes into play in constitutional interpretation where "correction through legislative action is practically impossible[.]"  Payne, 501 U.S. at 828 (quoting Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 407 (1932) (Brandeis, J., dissenting)).  But see Harris v. United States, 536 U.S. 545, 556 (2002)(stare decisis less important in constitutional cases).  The doctrine is important in "property and contract rights, where reliance interests are involved[.]" Payne, 501 U.S. at 828.  Additionally, the doctrine plays a role in ensuring that decisions of superior courts are not ignored or overturned by inferior courts.  See United States v. Allbery, 44 M.J. 226, 227-28 (C.A.A.F. 1996).

17

A decision to alter a policy of abatement ab initio does not fall into any of the categories identified above as important areas within which to preserve precedent under stare decisis. The issue before this Court is not one of constitutional or statutory interpretation, nor have we been presented with any "reliance interests" of Appellant.

"Stare decisis is a principle of decision making, not a rule, and need not be applied when the precedent at issue is 'unworkable or . . . badly reasoned'." Tualla, 52 M.J. at 231 (quoting Payne, 501 U.S. at 827). Admittedly, the current policy of abatement cannot be considered "unworkable." We believe, however, that the weight of reason, as discussed in the preceding section of this opinion, supports a change in the rule.

First, Berry focused in part upon the impact of finality under Article 71. We believe that this focus was misplaced. The proper focus of cases dealing with abatement is upon the opportunity for an appeal of right and a conviction that can be relied upon as fair and just. Moreover, there is nothing in the plain language of Article 71 imposing a congressional mandate for abatement ab initio. Article 71 no more compels that we adopt a policy of abatement ab initio than it compels the United States Supreme Court to have such a policy with respect to its review of military convictions.

The second asserted premise for abatement ab initio at this Court is the distinction drawn between the nature of review by petition at this Court and review by certiorari at the Supreme Court. See Berry, 37 M.J. at 160; Kuskie, 11 M.J. at 254-55. The mere possibility that this Court will exercise its discretion

to find "good cause" for a grant of review does not transform into an appeal of right similar to that existing at the Federal Circuit Courts of Appeals.  See 28 U.S.C. § 1291 (2000).  See also Berry, 37 M.J. at 164 (Crawford, J., dissenting).

Thus, we believe that this Court may alter its policy in regard to abatement ab initio without being constrained by stare decisis.  We are less constrained by the doctrine of stare decisis in this instance because we are determining a matter of court policy rather than contemplating a change in the law or a change impacting upon an articulable right of an appellant.  "The determination of a disposition to be made of proceedings cast into limbo by the death of the defendant-appellant appears, to us, to be one of policy only."  Whitehouse v. State, 364 N.E.2d 1015, 1016 (Ind. 1977).


CONCLUSION

We therefore adopt the rule established by the U.S. Supreme Court in Dove.  When an appellant dies pending an Article 67(a)(3) appellate review by this Court, we will dismiss or deny the petition but will not abate the action ab initio.[7]  Berry and Kuskie are hereby overruled to the extent that they are inconsistent with this decision.  In view of our conclusion that an appeal to the Courts of Criminal Appeals is an appeal of right, we leave to those courts or the Judge Advocates General to

---

[7] As the issue of abatement of an appeal involving capital punishment or an appeal certified by a Judge Advocate General are not before the Court, those issues will be reserved for another day.  See Article 67(a)(1)-(2), Uniform Code of Military Justice, 10 U.S.C. § 867(a)(1)-(2) (2000).

establish the parameters of a policy of abatement in the event that an appellant dies pending review at a Court of Criminal Appeals.

## DECISION

The Motion to Abate the Proceedings is denied, and the Petition for Grant of Review is dismissed.

United States v. Rorie, No. 02-0949/AR


EFFRON, Judge, with whom BAKER, J., joins (dissenting):

The lead opinion overrules fifty years of precedent on the subject of abatement. Today's decision is contrary to the express terms of the Uniform Code of Military Justice [hereinafter UCMJ], the consistent treatment of abatement by our Court dating from the earliest days of practice under the Code, the treatment of cases in the federal civilian courts of appeals, and the prevailing practice under state law.


Statutory requirements under the UCMJ

This case is about the statutory provisions of the UCMJ governing finality. In particular, this case addresses the issue of finality in cases subject to review in our Court when the death of the Appellant occurs before statutory proceedings have been completed in our Court. The UCMJ contains three pertinent statutory provisions. When the findings and sentence of a court-martial have been approved by a Court of Criminal Appeals, the decision of that court becomes the "final judgment as to the legality of the proceedings" under Article 71(c), UCMJ, 10 U.S.C. § 871(c) (2000) without further review by our Court if one of the following conditions has been met: (1) the service member withdraws an appeal of a non-capital case; (2) the service member does not file a timely petition for review

and the case is not otherwise under review by our Court; (3) our Court rejects a petition for review.

Although the finality language in Article 71(c) refers to cases in which a punitive separation has been adjudged, Rule for Courts-Martial 1209 [hereinafter R.C.M.], makes it clear that the same considerations apply to all courts-martial reviewed by the Courts of Criminal Appeals, regardless of the nature of the sentence:

> R.C.M. 1209. Finality of courts-martial
>
> (a) When a conviction is final.  A court-martial conviction is final when:
>     (1) Review is completed by a Court of Criminal Appeals and –
>         (A) The accused does not file a timely petition for review by the Court of Appeals for the Armed Forces and the case is not otherwise under review by that court; and
>         (B) A petition for review is denied or otherwise rejected by the Court of Appeals for the Armed Forces[.]

R.C.M. 1209 is consistent with the finality provisions of Article 76, UCMJ, 10 U.S.C. § 876 (2000), and the direct review provisions of Article 67(a), UCMJ, 10 U.S.C. § 867(a) (2000). Article 76 provides that the proceedings of a court-martial are "final and conclusive" only when "approved, reviewed, or affirmed as required by [the UCMJ]."  Article 67(a) describes two classes of cases within our jurisdiction that involve

2

mandatory review – capital cases and cases submitted to our Court upon certification of the Judge Advocate General concerned.  Article 67(a)(1)-(2).  With respect to a third class of cases – petitions by a service member - Article 67 provides:

> (a) The Court of Appeals for the Armed Forces shall review the record in -
>
> . . .
>
> (3) all cases reviewed by a Court of Criminal Appeals which, upon petition of the accused and on good cause shown, the Court of Appeals for the Armed Forces has granted a review.

The use of the term "shall review" in Article 67 is significant. Compare 10 U.S.C. § 101(e)(1)(2000)("'shall' is used in an imperative sense") with id. § 101(e)(2)(2000)("'may' is used in a permissive sense.")  Although Article 67(a)(3) provides our Court with much greater flexibility than the Article III courts of appeals in terms of deciding which cases to review, we do not have the unfettered discretion of the Supreme Court to deny review regardless of the merits of the case.  Compare 28 U.S.C. § 1291 (2000)(providing the Article III courts of appeals with "jurisdiction of appeals from all final decisions of the district courts" except where a statute provides for direct review in the Supreme Court) with 28 U.S.C. §§ 1254(1), 1257-1259 (2000)(describing cases that "may be reviewed" by the Supreme Court by writ of certiorari).  As noted in a treatise on

3

military law, "Counsel familiar with Supreme Court practice should not confuse the 'good cause' standard [under Article 67] with certiorari. Those courts that may review a case by issuing a writ of certiorari are not required to hear a case merely because a party demonstrates viable legal issues requiring relief." Legal Services, Dep't of the Army, Pamphlet No. 27-173, Trial Procedure 247 (1992).

The combination in Article 67 of mandatory language ("shall review") and a flexible standard ("upon good cause shown") reflects congressional intent to provide service members with a significant opportunity to obtain review by an independent, civilian tribunal, without requiring our court to grant full review in every case. See United States v. Byrd, 53 M.J. 35, 36-37 (C.A.A.F. 2000)(citing H.R. Rep. No. 81-491, at 6-7 (1949); S. Rep. No. 97-146, at 36 (1981)). See also S. Rep. No. 98-53, at 34 (1983).

Statutory interpretation

Courts-martial exercise limited, statutory jurisdiction over specific persons. See Articles 2-3, UCMJ, 10 U.S.C. §§ 802, 803 (2000); see R.C.M. 201(b)(4). The accused is the defendant at a court-martial, and the UCMJ does not authorize substitution of another person as a party to the court-martial if the accused dies either during or after trial.

United States v. Rorie, No. 02-0949/AR

Shortly after the UCMJ was enacted, our Court confronted the question of what action could be taken under the Code when an appellant died prior to final review of the legality of the proceeding. In United States v. Mosher, 14 C.M.R. 229 (1953), the Court was informed through a motion for abatement that the appellant had died subsequent to action on the case by the Board of Review – the predecessor of today's Courts of Criminal Appeals. Our Court granted the motion for abatement and dismissed the petition for grant of review. Id. at 229. For over fifty years, our Court consistently has granted motions for abatement when the appellant dies prior to issuance of a decision by our Court, as noted in the lead opinion. ___ M.J. ___ (9).

Stare Decisis

Reliance on precedent as a critical guidepost in deciding cases – the doctrine of stare decisis – is essential to the fair administration of justice. As the Supreme Court has emphasized, "it is indisputable that stare decisis is a basic self-governing principle within the Judicial Branch, which is entrusted with the sensitive and difficult task of fashioning and preserving a jurisprudential system that is not based upon 'an arbitrary discretion.'" Patterson v. McLean Credit Union, 491 U.S. 164, 172 (1989)(quoting The Federalist No. 78, at 490 (A.

5

Hamilton)(H. Lodge ed. 1988). Adherence to precedence "is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." Payne v. Tennessee, 501 U.S. 808, 827 (1991).

Because stare decisis is a principle of judicial decision making, not a rule, a precedent may be overruled when it is "unworkable or . . . badly reasoned." Id., quoted in United States v. Tualla, 52 M.J. 228, 231 (C.A.A.F. 2000). The role of precedent is particularly important in matters involving statutory interpretation:

> [A]ny departure from the doctrine of stare decisis demands special justification . . . . [T]he burden borne by the party advocating the abandonment of an established precedent is greater where the Court is asked to overrule a point of statutory construction . . . for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done.

Patterson, 491 U.S. at 172-73 (citations and internal quotations omitted).

The lead opinion would overturn a half-century of consistent precedent on the ground that our precedent is based upon a "policy" that is not "compelled by the interests of

6

justice or the jurisdictional underpinnings of this Court." __ M.J. (17). The issue before us, however, does not involve a choice among competing public policy alternatives. Our precedent involves a matter of statutory interpretation, in which the legal policy preferences of the judiciary yield to precedent unless the proponents of change demonstrate that the interpretation is either unworkable or badly reasoned.

As the lead opinion acknowledges, abatement under our precedent is not unworkable. __ M.J. (18). The lead opinion's suggestion that "the weight of reason supports a change in the rule" of abatement, falls far short of demonstrating that the rule is "poorly reasoned." __ M.J. (18).

The statutory basis for our current precedent was reviewed in Berry v. Judges of the United States Army Court of Military Review, 37 M.J. 158, 159-60 (C.M.A. 1993)(discussing the finality provisions in Article 71.) The opinion noted that our precedent was consistent with the prevailing practice in the Article III courts of appeals and the statutory language governing review of petitions in our Court. Id. at 160 (discussing Article 67(a)(3)).

The lead opinion offers several reasons for overruling Berry. First, the lead opinion states that abatement is not required by the express language of Article 71. ___ M.J. (18). Under the lead opinion's theory, the decision of the Court of

7

Criminal Appeals would constitute the final judgment of the legality of the proceedings in this case even though the decision was not final under the express requirements of Article 71. The majority's assertion that nothing in Article 71 "compels" the statutory interpretation set forth in Berry does not provide the appropriate test for overruling precedent. The issue before us is whether our precedents are so poorly reasoned that they must be overturned. Given the consistency between abatement, the language of Article 71, and the President's interpretation of the pertinent statutes in R.C.M. 1209, that case has not been made.

Second, the lead opinion states that our precedent is premised on "the distinction drawn between the nature of review by petition at this Court and review by certiorari at the Supreme Court." __ M.J. (18)(citing Berry, 37 M.J. at 160, United States v. Kuskie, 11 M.J. 253, 254-55 (C.M.A. 1981)). Neither case, however, held that our precedent on abatement was premised upon the distinction between the nature of our review and the nature of review in the Supreme Court; rather, in each case the merits of the analogy between review in our Court and review in the Supreme Court was raised by the Government as an argument for overturning our precedent. Each opinion explained why the Government's argument was unpersuasive. See Berry, 37 M.J. at 160; Kuskie, 11 M.J. at 254-55.

8

United States v. Rorie, No. 02-0949/AR

The lead opinion reiterates the suggestion, rejected in Berry and Kuskie, that we should overturn our precedents by analogizing review in our Court to review in the Supreme Court. ___ M.J. (6-8, 14-16). The opinion notes that the Supreme Court in the 1970s first adopted a policy of abatement, ___ M.J. (6)(citing Durham v. United States, 401 U.S. 381 (1971)), and then abandoned it five years later without explanation, ___ M.J. (6)(citing Dove v. United States, 423 U.S. 325 (1976)). The lead opinion also observes that the Article III courts of appeals have continued consistently to apply abatement, even in the aftermath of Dove, noting that several courts have explained the difference in terms of the distinction between the discretionary review in the Supreme Court and appeal as a matter of right in the courts of appeals. ___ M.J. (7-8). Building upon the distinction between abatement in the courts of appeals and non-abatement in the Supreme Court, the lead opinion suggests that because our review of petitions for "good cause" under Article 67(b)(3) is more analogous to discretionary review in the Supreme Court than appeal as of right in the circuit courts, we should follow the Supreme Court's non-abatement policy, as advocated by prior dissenting opinions in this Court. ___ M.J.(14-16).

There are several problems with this argument. First, the fact that Berry and Kuskie did not involve unanimous opinions

9

does not provide a reason for abandoning our precedents.  In

this regard, the Supreme Court's consideration of the

relationship between prior dissents and stare decisis in

Patterson is instructive.  In Patterson, the Court considered

whether to overrule Runyon v. McCrary, 427 U.S. 160

(1976)(interpreting a federal statute as prohibiting racial

discrimination in private schools admissions).  With respect to

the effect of prior divisions on stare decisis, the Court said:

> The arguments about whether Runyon was
> decided correctly in light of the language
> and history of the statute were examined and
> discussed with great care in our decision.
> It was recognized at the time that a strong
> case could be made for the view that the
> statute does not reach private conduct, but
> that view did not prevail.  Some Members of
> this Court believe that Runyon was decided
> incorrectly, and others consider it correct
> on its own footing, but the question before
> us is whether it ought now to be overturned.

491 U.S. at 171-72 (citations omitted)(declining to overturn the

Court's precedent).  We are in a similar situation.  The issue

is not whether we now agree that Berry was decided correctly or

incorrectly, "the question before us is whether it ought now to

be overturned."

Second, the issue is not whether our practice is so

analogous to review in the Supreme Court that we should adopt a

"policy" of abatement.  The issue before us is a matter of

statutory interpretation.  The current case, like the similar

cases we have reviewed over the past 50 years, requires us to interpret the mandate of Article 67(b)(3) -- that we "shall review" petitions "upon good cause shown" -- in light of the finality provisions of Article 71 and Article 76. See also R.C.M. 1209.

Third, the issue is not how we should resolve this question as a matter of first impression. Under the doctrine of stare decisis, the burden is on those who would change the precedent to demonstrate that our Court's interpretation of the law is so poorly reasoned or unworkable that it should be abandoned.

Fourth, the brief memorandum decision in Dove applying a policy of non-abatement in the Supreme Court and the circuit court opinions applying a policy of non-abatement cited in the lead opinion, ___ M.J. (7-8, 16) involve specific statutes cast in terms quite different from the applicable provisions of the UCMJ. Compare 28 U.S.C. § 1254(1)(wholly discretionary review in the Supreme Court), and 28 U.S.C. §§ 1291-1292 (2000)(appeal as of right to the circuit courts), with Article 67(b)(3)(providing that our Court "shall review" petitions "upon good cause shown") and Article 71(c)(setting forth express conditions governing final determinations as to the legality of court-martial proceedings). At best, the comparison between the practice of non-abatement at the Supreme Court and abatement at the courts of appeals provides fodder for a policy debate

regarding the competing merits of each approach.  What is important from the perspective of the current case is that the differing practices in the Article III courts demonstrate that they have not rejected abatement, and that the policies developed in those courts do not take into account the specific statutory provisions of the UCMJ.  In the context of stare decisis, where the proponents of abandoning precedent must show that our Court's position is "poorly reasoned," the differing views of the Article III courts do not demonstrate that our prior cases have misconstrued the interrelationship among Articles 67, 71, 76 and R.C.M. 1209.

Finally, the Supreme Court also has emphasized the relationship between precedent and congressional action for purposes of considering stare decisis.  In <u>Hilton v. South Carolina Public Ry. Comm'n</u>, 502 U.S. 197 (1991), the Court considered whether to overturn the precedent of <u>Parden v. Terminal Railway of Alabama Docks Department</u>, 377 U.S. 184 (1964)(construing various federal statutes as permitting a cause of action against a state-owned railroad in state court).  In the course of concluding that the precedent should not be overturned, the Court said:

> Congress has had almost 30 years in which it could have corrected our decision in <u>Parden</u> if it disagreed with it, and has not chosen to do so.  We should accord weight to this continued acceptance of our earlier holding.

12

502 U.S. at 202.  With respect to the issue before us, Congress has had over 50 years to overturn Mosher and has chosen not to do so.  Of particular note, the year after our 1981 decision in Kuskie, the Department of Defense submitted to Congress a comprehensive legislative proposal, including revision of the appellate review process, which led to enactment of the Military Justice Act of 1983, Pub. L. No. 98-209, 97 Stat. 1393.  See S. Rep. No. 98-53, at 1, 7-11 (1983).  The legislation, which included amendments to Articles 67 and 71, did not address abatement.  Congressional inaction, which may stem from many causes, should be viewed with caution for purposes of statutory interpretation.  Under Hilton, however, such inaction provides additional grounds for concluding that the proponents of changing our interpretation of the UCMJ have not surmounted the hurdle imposed by the doctrine of stare decisis, particularly in light of the broad language used by the President in the implementation of the pertinent statutory provisions.  See R.C.M. 1209.

State court practice

The lead opinion observes that while most states apply some form of abatement, a number of states recently have moved in a different direction.  ___ M.J. (8).  A number of those states,

13

however, as a matter of state law, permit an appeal to proceed on the merits, based on the interests of society, the defendant, and the defendant's estate in appellate resolution of the case. See, e.g., Gollott v. State, 646 So.2d 1297 (Miss. 1994); State v. McDonald, 424 N.W.2d 411 (Wis. 1988); State v. McGettrick, 509 N.E.2d 378 (Ohio 1987); State v. Jones, 551 P.2d 801, 803-04 (Kan. 1976); Commonwealth v. Walker, 288 A.2d 741, 742 (Pa. 1972). Such a result, however, is not possible under the UCMJ, which makes no provision for substitution of a party. As a result, the lead opinion finds it necessary in the present case to dismiss the appeal, contrary to the approach of a significant number of states that have modified their abatement rules. The inconsistency between the majority's decision and the approach of those states underscores the need for any change in this area to reflect comprehensive legislative consideration rather than piecemeal judicial action.

Policy considerations

The lead opinion offers a number of policy reasons for not applying abatement, including confidence in the capabilities of the Courts of Criminal Appeals, societal interests in the preservation of a judgment of conviction, and the impact on victims rights. ___ M.J. (12-14). These are important policy concerns, and should be given full consideration in the

14

appropriate forum in terms of balancing the relative merits of abatement and appellate review. Given the wide variety of means in which abatement has been applied or modified at both the state and federal level, however, these concerns do not resolve the issue of how any change should be implemented in the military justice system. Consideration of a new approach to abatement requires attention to a number of difficult questions, including:

(1) If the accused dies while the case is pending review by the convening authority, should the decision of the court-martial constitute the final judgment as to the legality of the proceedings?

(2) If the death occurs prior to a decision by a Court of Criminal Appeals, should the decision of the court-martial and action of the convening authority constitute the final judgment?

(3) If death occurs following a decision by the Court of Criminal Appeals, should there be an opportunity for further review on the merits through substitution of a party?

(4) If death occurs while a case is under mandatory review by our Court under Article 67(b)(1) (capital cases) or Article 67(b)(2) (certified cases), can the review proceed on the merits?

(5) Assuming one party is the United States in such a case, who is the other party?

These are critical questions, all opened but left unanswered by the lead opinion. Our current precedent may or may not represent the best policy choice, but it is clear, workable, and based on statute. Under the lead opinion, we face the possibility of years of litigation to resolve conflicting decisions at the command level, by individual services, and by the Courts of Criminal Appeals. Because this is a matter of statutory interpretation, we should sustain our precedent, relying on Congress to address these concerns and balance the interests of appellants, their families, victims, the armed forces, and society at large.